IRVING TRUST CO. v. BANK OF UNITED STATES et al.

No. 36.

Circuit Court of Appeals, Second Circuit.

Dec. 7, 1931.

Krause & Hirsch, of New York City (Sydney Krause and George C. Levin, both of New York City, of counsel), for complainant-appellant.

David Haar, of New York City, for appellees.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge. The trustee in bankruptcy of Out-Of-The-Inkwell Films, Inc., a New York corporation engaged in the business of manufacturing motion picture cartoons, filed its bill against the Bank of the United States to set aside a preferential transfer to the bank because the transfer was made when the corporation was insolvent or its insolvency was imminent, and when the bank had reasonable cause to believe that the transfer would effect a preference. Recovery was also sought against Alfred Weiss, the president of the corporation, on the ground that he was concerned in the transfer and intended that a preference should be given. The suit was instituted under section 15 of the New York Stock Corporation Law as amended April 15, 1929 (Laws 1929, c. 653).

The questions involved are almost entirely ones of fact. Out-Of-The-Inkwell Films, Inc., entered into a contract with Famous Players-Lasky Corporation in March, 1927, by which the former was to produce fifty-two moving pictures for the latter at the rate of twenty-six per year. This contract recited that one Max Fleischer was to render his services in the production of cartoons for the pictures until after the delivery of the last cartoon.

Weiss, the president of Out-Of-The-Inkwell Films, Inc., established in March, 1927, a line of credit of $100,000 with the Bank of United States. The bank was shown the contract with Famous Players-Lasky Corporation at the time when the arrangement for credit was made and asked for a transfer of the contract as security for its advances. Weiss at that time declined to give the security, but, when two notes which aggregated $30,000 became due in April and May, 1929, the bank required an assignment of the contract as a condition of accepting new notes for this overdue paper. This assignment was made May 17, 1929, and the credit was thereupon further extended.

536

About January, 1929, Max Fleischer, and his brother David, who had been employed by Out-Of-The-Inkwell Films, Inc., on a five-year contract, ceased all connection with the company. Weiss testified that this was because their work in producing pictures was 'unsatisfactory and much more expensive than he had been led to suppose would be the case. Thereupon they sued the company—David for $27,800 and Max for $40,000, each claiming a breach of contract. In January, 1929, the company owed Agfa Raw Film Products Corporation about $8,000, and assigned to it as security a large number of pictures, furniture, and fixtures. Artclass Pictures Corporation also held an account against Out-Of-The-Inkwell Films, Inc., of $6,382.56, and one Harry Bernstein of $3,401.25. The validity of all these claims, except those of Agfa and Artclass Pictures, was disputed by Weiss. The Bank of the United States had a balance of $53,000 due it from Out-Of-The-Inkwell Films, Inc., on May 17, 1929, when it received the assignment of the contract with Famous Players to secure its advances. Weiss testified that none of the above claims except those of Agfa, Artclass, and the bank were valid. On the other hand he estimated the contract with Famous Players to have been worth $250,000 because of the value of the pictures if synchronized. Even Max Fleischer said that at the time of bankruptcy the value of the contract was $15,000, because the "silent" pictures as they were would bring in that amount. That the contract had a considerable, even if uncertain, value, at the time the security was given the bank is evident. In June, 1929, Out-Of-The-Inkwell Films, Inc., sold two of its pictures outright to Famous Players for $11,000. The bank balance during May was $14,000. It also realized $22,514 from Famous Players under the contract from January, 1929, to and including August, 1929, and apparently realized $14,036 from the contract from September, 1929, to March 30, 1930 (fols. 552 and 200). Moreover, the contract had yielded Out-Of-The-Inkwell Films $168,056 altogether from the time it was made. In addition to this we have no means of knowing the value of the large number of pictures assigned to Agfa as security. Weiss had become interested in the business in 1926 and had sufficient faith in it to invest $225,000 of his own money in the enterprise which had been originally organized by one of the Fleischers. He started to make pictures himself after the Fleischers had left and as soon as he recovered from pneumonia. He continued business for about nine months before bankruptcy occurred, and made some seventeen pictures during that period. He either believed his company would pull through or went to all the trouble he did merely to prefer the bank. The proof is not clear enough to show that Weiss intended to prefer.

It is argued that, inasmuch as the action by David Fleischer went to judgment in November, 1929, his claim should be regarded as amounting, in May, 1929, to the face of the judgment which he later obtained. But by November, 1929, the situation of the company had become hopeless, and Weiss may have felt that there was no advantage in contesting the claim, although an answer had been interposed by his company and the case' had been marked ready for trial five times. It does not follow that in May, 1929, David Fleischer appeared to be entitled to any large recovery; nor is it important that the claim is now res judicata. It may originally and when vigorously opposed have been of much less account. The action by Max Fleischer never seems to have been actively pressed. Weiss testified that neither had a valid claim, and the trial judge seems to have believed him. The abdication of Max Fleischer, who was the expert in making pictures, occurred four months before the bank was given its security, and apparently was the chief cause of the ultimate downfall of the company. But the inability of Weiss to carry on the business successfully was not so immediately apparent in May, 1929, that we should attribute to him an intent to prefer the bank. His company still held its contract with a very great film distributor, and his actions were consistent with only a continuance of his business in the expectation of saving the enterprise. Even if we take the actual recoveries under the contract and the value placed on it by Max Fleischer at the time of bankruptcy, there were the following assets in esse and posse in May, 1929:

Cash in bank...................$14,000.00
Pictures sold to Famous Players.. 11,000.00
Subsequent receipts from contracts
   with Famous Players.......... 25,721.50
Value of contract at time of bankruptcy ..................... 15,000.00

$65,721.50

The pictures assigned to Agfa were further assets that may have been worth much more than the claim it held. The important question is whether, in May, 1929, the Fleischer claims appeared large enough to more than exhaust this equity and the value of the contract with Famous Players, as

well as cash in bank. We cannot say that they palpably did. Indeed, there is ground to believe that the contract with Famous Players was worth substantially more than the estimate of the disgruntled Max Fleischer. The claim against Alfred Weiss failed, according to the view of the trial judge, because of lack of proof of an intent to prefer.

Still more the cause of action against the bank failed of proof. The bank was shown a financial statement of December 31, 1928, indicating assets of about $400,000 in excess of liabilities. It had no information that might cause concern except that a suit had been started by one of the Fleischers. While it knew that its loans were being reduced rather slowly and that payment probably depended on the Famous Players' contract, there was no sufficient showing that, when it required security in May, 1929, it had reasonable cause to believe that a preference would be effected.

Corney v. Saltzman (C. C. A.) 22 F.(2d) 268, has no bearing on the present case. That decision involved the effect of an agreement to mortgage future earnings. In the present case there was not a mere agreement to mortgage, but an outright assignment of Out-Of-The-Inkwell Films to the bank of all its interest in the contract with Famous Players as security for the advances.

Upon the evidence the District Judge held that complainant had not made out a case. While the question is a close one, we can see no reason to disturb the findings of the trier of the facts who saw and heard the witnesses.

The decree is affirmed, but without costs.