**MARKS v. WENZEL et al.**

District Court, E. D. New York.
Oct. 20, 1932.

Julius L. Rassner, of Brooklyn, N. Y. (Lloyd B. Kanter and Harry H. Schutte, both of Brooklyn, N. Y., of counsel), for plaintiff.

Shaine & Weinrib, of New York City, for defendant Wenzel.

Baylis & Sanborn, of New York City (Frederick H. Sanborn, of New York City, of counsel), for defendant bank.

CAMPBELL, District Judge.

This is an action in equity, brought by a trustee in bankruptcy, to set aside as preferential, under the provisions of the Bankruptcy Act (11 USCA § 1 et seq.) and under section 15 of the Stock Corporation Law of the state of New York (Consol. Laws N. Y. c. 59), an assignment made on March 7, 1930, by Werner-Mitchell Company, Inc., to defendant Bank of Huntington & Trust Company of moneys due or to become due to the bankrupt from the state of New York, in connection with work performed and materials furnished by the bankrupt under its contract with the Long Island state park commission, for the construction of a bathhouse at Jones Beach, Long Island, and to recover an alleged payment received on April 11, 1930, of $5,000 and an alleged payment received on May 31, 1930, of $40,000.

Briefly stated, the facts are as follows:

Werner-Mitchell Company, Inc., the bankrupt above described, was incorporated in November, 1924, and was engaged in the contracting business around New York City, with an office in Brooklyn, from 1925 until the filing of the petition in bankruptcy.

The defendant Wenzel is a retired contracting plumber and a man of some means. During all the times in question he resided and still resides at Huntington, Long Island, where during all of said times he had numerous activities and was well and favorably known at the defendant bank.

He was an old and intimate friend of the Werners, and sometimes loaned money to them.

The said bankrupt was a family affair with a very small capital.

On or shortly prior to April 4, 1929, the said bankrupt secured the contract to construct a bathhouse for the Long Island state park commission, at Jones Beach, Long Island.

The said bankrupt was already engaged on a job at Avenue Z, Sheepshead Bay, for the city of New York.

The small capital of the said bankrupt was already engaged in the Avenue Z job, and was insufficient to finance the job at Jones Beach.

William Werner, Sr., then went to Huntington, Long Island, and asked the defendant Wenzel to lend the said Werner-Mitchell Company, Inc., $50,000 on its note, and promised to repay the loan from the moneys to be received from the Jones Beach job as they came in from time to time.

The defendant Wenzel said he could not make a loan of that size, but would see if the bank would let him have it.

He requested the loan from Mr. Conklin, president of the defendant bank, and told him that he (Wenzel) intended to reloan the money to the said Werner-Mitchell Company, Inc., and that William Werner, Sr., had promised to repay him (Wenzel) out of the proceeds of this job as the moneys were received from time to time, which was a fact; and the defendant Wenzel also told the said president of the defendant bank that he would repay his loan to the bank as he received the money from said Werner-Mitchell Company, Inc., and that said company would open an account with the said bank.

The defendant bank loaned $50,000 to the defendant Wenzel, and took his three months' note for that sum, secured by a deed to his real estate in Huntington, which deed was not recorded.

At the request of the defendant Wenzel, an account was opened in the defendant bank in the name of the bankrupt, and the $50,000 placed to its credit on April 4, 1929.

The defendant Wenzel took the demand note of the bankrupt.

The bankrupt then proceeded with the performance of the Jones Beach contract, and on July 29, 1929, it received a payment on the contract of $129,716.92, which it deposited in the defendant bank, and two days later repaid the defendant Wenzel $25,000 by check which he indorsed to the defendant bank as payment on account of his note.

On November 11, 1929, the bankrupt again borrowed $15,000 from the defendant Wenzel which the defendant bank loaned him, taking his note therefor, and he passed it on to the bankrupt, taking its note.

On December 12, 1929, the bankrupt again borrowed another $5,000 from the defendant Wenzel, which the defendant bank loaned him, taking his note therefor, and he passed it on to the bankrupt, taking its note, and at the same time the defendant Wenzel gave the defendant bank a letter, which was dictated by Addison W. Sammis, the secretary and treasurer of the defendant bank at the time, reading as follows:

"In view of the fact that the Bank of Huntington and Trust Company is this day making to me a loan of $5,000 in addition to the $40,000 which I have already borrowed from the bank, I beg to certify as follows:

"That I am borrowing the same for the Werner Mitchell Co., Inc., that said Werner Mitchell Co., Inc., have already completed for the State work for which they will be paid in the amount of over $200,000 and that a small amount of work still to be completed will give them a total amount due from the State of $240,000.

"I further certify that this amount is due and should be received and deposited in the Bank of Huntington and Trust Company within thirty days from this date, and that there are no offsets or claims which will in any way affect the claim of said Werner Mitchell Co., Inc., on the payment to be received from the State.

"I furthermore certify that the notes which I have given to the Bank of Huntington and Trust Company will be paid from the amount to be received in accordance with the agreement which I have with the Werner Mitchell Co., Inc."

On December 28, 1929, the $5,000 loan was repaid by the bankrupt to the defendant Wenzel and by Wenzel to the defendant bank.

The bankrupt paid interest to Wenzel regularly on the amounts loaned by him to it, and he paid the interest to the defendant bank.

The Jones Beach job was virtually finished, and the large final payment seemed about to become due.

The bankrupt was bidding on new work.

Final payment on the Jones Beach job continued to be delayed. The money from that job looked to be certain, but the time of payment was uncertain.

The defendant Wenzel was making monthly renewals of his notes in the defendant bank.

On January 6, 1930, the bankrupt owed the defendant Wenzel $40,000, which he in turn owed to the defendant bank, the latter holding the notes of the defendant Wenzel for $25,000 and $15,000, respectively, and on that day the two loans were consolidated, the defendant Wenzel giving to the defendant bank his note for $40,000, payable one month after date.

On January 10, 1930, the defendant bank loaned the defendant Wenzel $5,000 additional on his one month's note, which he in turn loaned to the bankrupt.

On January 23, 1930, William Werner, Jr., prepared and on behalf of the bankrupt executed an assignment of all the moneys due or to become due from the Jones Beach job to the defendant bank, and on January 28th he sent a copy to the state comptroller for filing in his office, and delivered a duplicate original to the defendant Wenzel, who at the request of William Werner, Jr., took it to the defendant bank and delivered it to Mr. Sammis, at the end of January or the first part of February, 1930.

The defendant bank did not request the assignment and knew nothing about it until it was delivered to Mr. Sammis, about February 1, 1930.

The making of the assignment was the idea of William Werner, Jr., who suggested to the defendant Wenzel that, instead of renewing the notes from month to month, he would give the defendant Wenzel an assignment, or the defendant bank an assignment, so that the assignment would be in the hands of the bank.

The bank had had no dealings whatever with the bankrupt up to this time, except those of bank and depositor.

The bankrupt was not indebted to the defendant bank.

The defendant bank never took any steps in regard to the assignment, but simply waited for the money to be paid by the state, and upon its collection proceeded to close the transaction.

The assignment was absolute in form and transferred to the defendant bank the moneys that were to come from the state, without any qualifications whatever.

On February 3, 1930, the bankrupt desired to make a bid on another contract, which was required to be accompanied by a certified check for $7,500, and applied to the defendant Wenzel for the money, who borrowed it from the bank and loaned it to the bankrupt.

The bid failed, and on February 7, 1930, the money was repaid by the bankrupt to the defendant Wenzel, and by Wenzel to the defendant bank.

On February 6, 1930, the $40,000 note of the defendant Wenzel, held by the defendant bank, was renewed for one month, and thereafter allowed to run as an open item.

The defendant Wenzel at the same time allowed the bankrupt to extend its note for another month, and thereafter allowed it to run as an open item.

On February 10, 1930, the $5,000 note made by the defendant Wenzel to the defendant bank was renewed for one month, and thereafter allowed to run as an open item. The defendant Wenzel, at the same time, allowed the bankrupt to extend its note for another month, and thereafter allowed it to run as an open item.

The defendant Wenzel, during February, 1930, made other loans to the bankrupt aggregating $2,700, which sums do not appear to have been borrowed by Wenzel from the defendant bank, and which were repaid by the bankrupt on February 27, 1930.

The assignment of January 23, 1930, was not filed in the proper office, and, on or about March 7, 1930, William Werner, Jr., without the knowledge of the defendant bank or the defendant Wenzel, prepared and filed with the state department of audit and control, and with the Long Island state park commission, the proper offices, a second or confirmatory assignment, and a few days thereafter delivered a duplicate original copy to the bank, which accepted and kept it as it had the other.

The first that the bank knew of this assignment was when it was apprised of it by a letter of the state comptroller.

William Werner, Jr., prepared the assignment which was absolute in form and purported to assign all the moneys due or to become due under the Jones Beach contract to the bank, but he testified, "When the bank got the money they were supposed to deposit it to our account."

About March 15, 1930, a notice of lien was filed, and Mr. Sammis of the defendant bank, suggested to the defendant Wenzel "That it might be well if he had a financial statement to file with the bank," and in accordance with that suggestion the defendant Wenzel "asked for the statement."

About March 15, 1930, the defendant Wenzel brought the statement to the bank.

The statement showed solvency with a favorable balance including estimates of expenses for completion of both jobs on hand, of $11,416.47.

There is no evidence that Sammis, of the defendant bank, or the defendant Wenzel, knew that an alleged obligation of $10,000 was owing to Miss Werner and had been omitted, even if anything was due to her. They were not in a position to know and had no motive for remaining ignorant.

On March 22d, the bankrupt sent to the defendant Wenzel its two checks to his order for $5,000 and $40,000, respectively, with the following explanatory letter:

"My dear Mr. Wenzel: In regard to our indebtedness of $45,000.00 with interest, which amount you borrowed from the Bank of Huntington for our account in accordance with your suggestion, we are sending you herewith two checks, one for $5,000.00 and one for $40,000.00, dated March 22nd.

"As you understand, we do not have any monies in the bank to meet these checks at this time. We expect to meet the check for $5,000.00 in about two weeks, which will be part of the money which we will receive from the Sheepshead Bay job, and the check for $40,000.00 in about four weeks. The check for $40,000.00 will be paid out of the monies which will be deposited at the Bank of Huntington under the assignment which we heretofore made to the Bank of Huntington coming to us from the Jones Beach job.

"It is understood that the $5,000.00 check will be paid out of the Sheepshead Bay job, and the $40,000.00 check will not be presented until the bank receives the money under the assignment of the Jones Beach job."

After indorsing the checks Wenzel delivered them to the bank on March 25, 1930.

On April 10, 1930, the bankrupt made a deposit in the defendant bank of $18,199.50, received on the Sheepshead Bay job.

On April 11, 1930, the bank charged off the amount of the said $5,000 check from the deposit credit of the bankrupt, marked the check as paid, and returned the $5,000 note to the defendant Wenzel.

At the time that the assignment of March 7, 1930, was filed, but one lien that of the Montauk Plumbing & Heating Company, had been filed.

Subsequently other liens were filed, two of which the bankrupt bonded.

On May 14, 1930, the bankrupt wrote letters to the defendant bank authorizing it to pay the three undisputed liens, including the lien of the Montauk Plumbing & Heating Company, from the final payment due from the state on the Jones Beach job. The defendant bank thereupon wrote letters to these lienors that, when the expected payment was received from the state, the amount of their liens would be paid to them by the bank. On May 26th, the bankrupt sent a letter to the defendant bank inclosing three checks, dated May 28, 1930, to the order of these lienors, or the bank, for the amount of the liens.

On May 31, 1930, the bank received from the comptroller a warrant or check, drawn payable to the defendant bank, the assignee, for the final payment on the Jones Beach job, in the sum of $62,553.09, and credited it to the account of the bankrupt.

The defendant bank then charged the account of the bankrupt with $40,000, the amount of the check aforesaid, and the defendant Wenzel paid the interest, thereby settling the note to the defendant bank, made by the defendant Wenzel, and the defendant bank returned the note and deed, which he had given as security to the defendant Wenzel. The defendant bank also charged the bankrupt's account with the three checks covering the liens, and, in order to have vouchers for the payments, the defendant bank issued its own checks to the order of the lienors, which were paid by the bank in due course.

The bankrupt was solvent on January 23, 1930.

The bankrupt was solvent on March 15, 1930, and there is no evidence of any financial change adverse to the bankrupt between March 15, 1930, and March 25, 1930, when the said checks were delivered to the defendant bank and April 11, 1930, when the $5,000 check was charged to account of the bankrupt by the defendant bank.

It is on these facts that plaintiff asks for a decree against the defendants.

Plaintiff contends, and defendants deny, that the defendant Wenzel was a stockholder of the bankrupt.

The stock book of the bankrupt was not produced. The only evidence offered on behalf of plaintiff was the cashbook, which, as I view all the evidence, did not show that the defendant Wenzel was a stockholder, or that he invested the $10,000 in question in the bankrupt, but, on the contrary, it shows that he made a loan of that sum to William Werner, Sr., on which he was paid interest.

Assuming, however, that it does appear from the cashbook that the defendant Wenzel was a stockholder that alone is not sufficient, and the case of Union National Bank v. Scott, 53 App. Div. 65, 66, 66 N. Y. S. 145, cited by the trustee, is not in my opinion authority in support of plaintiff's contention.

Even if the stock book had been produced and showed the name of the defendant Wenzel as a stockholder, it would only create a presumption which could be destroyed by evidence. Breck v. Brewster, 150 App. Div. 202, 134 N. Y. S. 697.

The defendant Wenzel is in no way responsible for the missing ledger. And the evidence shows that the defendant Wenzel knew nothing of the entries in the books of the bankrupt.

The loan of $10,000 seems to have been made by the defendant Wenzel to William Werner, Sr., and by him loaned to the bankrupt. Whatever may have been done with reference to issuing stock to William Werner, Sr., when he made the loan to the bankrupt, such stock appears to have been retired when the loan was paid. But in any event, the defendant Wenzel has not been shown to have had any part in or knowledge of the stock and its disposition, other than that he refused 100 shares offered to him by William Werner, Sr., as security for the loan.

There was no proof by common-law rules of evidence that the defendant Wenzel was a stockholder of the bankrupt, and the uncontradicted oral evidence of William Werner, Sr., and the defendant Wenzel, is that he was not such a stockholder. Therefore Zander v. New York Security & Trust Co., 178 N. Y. 208, 70 N. E. 449, 102 Am. St. Rep. 492, and U. S. Radiator Corp. v. State of New York, 208 N. Y. 144, 101 N. E. 783, 46 L. R. A. (N. S.) 585, cited by the plaintiff, are not in point.

While it is true that there may be some suspicion as to the relations of the defendant Wenzel with the corporation, it does not seem to me that those suspicions point to an ownership of any stock; and, let the suspicion be what it may, it is insufficient to support a finding that the defendant Wenzel was a stockholder of the bankrupt. Brookheim v. Greenbaum (D. C.) 225 F. 635, affirmed (C. C. A.) 225 F. 763.

The defendant Wenzel has not been

shown to have been a stockholder of the defendant bank, and no recovery can be had against him under section 15 of the Stock Corporation Law of the state of New York, on the theory that he was a stockholder of the bankrupt.

The notes held by the defendant bank for $40,000 and $5,000, respectively, were drawn by the defendant Wenzel, and were not indorsed by the bankrupt; therefore, on January 23, 1930, the bankrupt was not indebted to the defendant bank on said notes.

There is no evidence to show that the bankrupt was insolvent at that time.

The bankrupt was indebted to the defendant Wenzel at that time in the sum of $45,000 for money loaned by him to it, which money he had borrowed from the defendant bank, for which loans the bankrupt had given its notes to the defendant Wenzel.

At the time of his making the original loan of $50,000 to the bankrupt, the defendant Wenzel had been promised by William Werner, Sr., who solicited the loan, that payment would be made as the money was received from the state.

The final payment from the state was not made, as work remained to be done, and as a consequence the bankrupt's note to Wenzel, and Wenzel's note to the defendant bank, were being renewed from month to month, and William Werner, Jr., with the intention to render this unnecessary, gave the assignment to the defendant bank of the money to be paid on the Jones Beach job.

The bankrupt was asking extension of the time of payment of its debt to the defendant Wenzel, and he in turn was asking extension of the time of payment of his debt to the bank, and, whatever may now be said, the purpose of the execution of such assignment was undoubtedly to facilitate collection by the bank, and to secure the payment of the bankrupt's debt to the defendant Wenzel, who was indebted to the defendant bank for the money he had loaned to the bankrupt.

There is no evidence on which could be predicated insolvency of the bankrupt at that time.

Subsequent to the making of such assignment, the defendant Wenzel extended the time of payment of the notes of the bankrupt, and the defendant bank extended the time of payment of the notes of the defendant Wenzel, and thereafter the notes so given were allowed to stand as open items.

The assignment of January 23, 1930, having been filed improperly, on March 7, 1930, William Werner, Jr., filed another assignment to the defendant bank, in the proper offices.

He did not consult with either of the defendants before filing such assignment, and it was not requested by either of them.

There is no evidence that the bankrupt was insolvent at that time; on the contrary, the evidence is that the bankrupt was solvent, and there is no reason whatever why there should be deducted from the balance shown in the statement of March 15, 1930, a claim of Miss Werner for $10,000, as it appears to me that such sum was not due to her, but had been paid.

There is no evidence to disprove the account receivable of $4,100 due to the corporation from William Werner, Jr., and shown in the statement made by the bankrupt, of March 15, 1930, and given to the defendant bank by the defendant Wenzel.

That the assignment to the defendant bank was for the security of the defendant Wenzel, as to the $40,000 note, is plainly shown by the letter of the bankrupt, of March 22, 1930, and the two checks of $40,000 and $5,000, respectively, to the order of the defendant Wenzel, drawn on the Bank of Huntington by the bankrupt.

As to the $5,000, the letter clearly provides for its payment from a different fund.

There is no evidence to show that the bankrupt was insolvent on that date.

The $5,000 check drawn to the order of the defendant Wenzel which he had indorsed and left with the defendant bank, was paid on April 11, 1930, out of funds received from the Sheepshead Bay job, and deposited in the defendant bank on April 10, 1930.

On May 31, 1930, the defendant bank received the comptroller's warrant or check drawn to its order as assignee for the balance of the Jones Beach job, and deposited the same to the credit of the bankrupt, and then charged against the same the check for $40,000 drawn to the order of the defendant Wenzel, which he had indorsed and left with it.

The defendant bank was not a creditor of the bankrupt as to the said $45,000, and received no payment from the bankrupt.

The defendant bank and its officers had no knowledge, nor were they at any time before the said checks were paid by it put on notice that the bankrupt was insolvent, and no payment of the said $45,000 or any part thereof was made by the bankrupt to the defendant bank.

The plaintiff can have no recovery against the defendant bank.

988

The bankrupt was indebted to the defendant Wenzel in the sum of $45,000, and that debt was paid to him.

■ The plaintiff contends that the payment of the aggregate sum of $45,000 was a transfer voidable under section (?)b of the Bankruptcy Act (11 USCA § 96 (b), so much of which as is necessary for consideration at this time reads as follows:

"If a bankrupt shall have * * * made a transfer of any of his property, and if, at the time of the transfer * * * and being within four months before the filing of the petition in bankruptcy * * * the bankrupt be insolvent and the * * * transfer then operate as a preference, and the person receiving it * * * shall then have reasonable cause to believe that the * * * transfer would effect a preference, it shall be voidable by the trustee and he may recover the property or its value from such person."

Five elements of such voidable preferences are presented by this section of the Bankruptcy Act, each of which is necessary to sustain a suit by the trustee. They are:

(1) That a transfer of property of the debtor has taken place.

(2) That the debtor at the time of the transfer was insolvent.

(3) That the transfer was made within four months before the filing of the petition in bankruptcy.

(4) That, by the transfer, the creditor must have been enabled to obtain a greater percentage of his debt than other creditors of the same class.

(5) That the person receiving the transfer must have had reasonable cause to believe that the enforcement of the transfer would effect a preference. Grandison v. National Bank of Commerce (C. C. A.) 231 F. 800.

A consideration of the law and the facts leads me to the following conclusion as to each element in its order, as follows:

1. A transfer of $45,000 from the bankrupt to the defendant Wenzel took place.

2. That the bankrupt was insolvent at the time of the transfer has not been shown.

The evidence does not fix a positive date when the bankrupt became insolvent earlier than May 31, 1930, when it is shown by the financial statement of the bankrupt as of May 31, 1930, prepared by its certified public accountant, Karmel (Plaintiff's Exhibit 9), and which was not based entirely on the books or records of the bankrupt.

With reference to the two payments of $5,000 and $40,000, respectively, I will deal with them separately.

I will first consider the payment of $5,-000. This payment was not made from the proceeds of the Jones Beach job, nor was it covered by the assignment of those proceeds to the bank.

The letter of March 22, 1930, plainly shows that this sum was to be paid from the proceeds of the Sheepshead Bay job.

The financial statement of the bankrupt of March 15, 1930, showed solvency and no evidence has been offered that shows insolvency of the bankrupt on April 11, 1930.

■ Solvency having been shown on March 15, 1930, is presumed to have continued until insolvency is shown.

Therefore it matters not whether it be found that the transfer was made on March 22, 1930, by the delivery of the $5,000 check by the bankrupt to the defendant Wenzel, or the charging off of that check by the bank on April 11, 1930, as there is no evidence in this case which would support a finding that the bankrupt was insolvent on either date.

Figures are given at the top of page 16 of the plaintiff's brief which are not in evidence and cannot be considered.

■ The concession that the trustee has not come into possession of a sufficient sum to enable him to pay and discharge the bankrupt's debts in full is far from proving insolvency on April 11, 1930.

With reference to the transfer of the $40,-000, the question of the insolvency of the bankrupt at the time of the transfer is dependent upon whether such transfer be held to have been made on January 23, 1930, March 7, 1930, March 22, 1930, March 25, 1930, or May 31, 1930. If on any of the first four mentioned dates, then the bankrupt was not shown to have been insolvent at the time. If on the last-mentioned date, May 31, 1930, then it was at a time when the bankrupt was, according to the said statement (Plaintiff's Exhibit 9) insolvent.

■ As it will be necessary to determine when the transfer was made in order to arrive at a conclusion as to whether it was made within four months before the filing of the petition in bankruptcy, it will be sufficient to discuss that but once.

3. As I have hereinbefore stated, I am convinced that the assignment of January 23, 1930, and the confirmatory assignment of March 7, 1930, were made to the defendant bank to facilitate collection by it of the pro-

ceeds of the Jones Beach job and for the security of the defendant Wenzel, the creditor of the bankrupt, and that the transfer to the defendant Wenzel was made by the bankrupt by the assignment.

The first assignment of January 23, 1930, was clearly before the commencement of the four months' period prior to the filing of the petition.

Plaintiff contends that such assignment was ineffective to save it from condemnation as preferential under section 60b of the Bankruptcy Act (11 USCA § 96 (b), as it was not filed in the proper office.

Under sections 15 and 16 of the Lien Law of the state of New York, Laws 1909, c. 38 (Consol. Laws N. Y. c. 33), the only class originally sought to be protected by those provisions are subsequent lienors. By amendment in 1925 (Laws 1925, c. 624), a subsequent assignee in good faith and for a valuable consideration, whose assignment is first duly recorded, is brought within its protection.

By chapter 515, of the Laws of 1929, these sections were re-enacted without substantial change, no change being made in section 16, and by chapter 859 of the Laws of 1930 section 16 was amended by changing the filing time from ten days to twenty days.

In Edison Electric Illuminating Co. v. Horace E. Frick Co., 221 N. Y. 1, 116 N. E. 369, L. R. A. 1917F, 1123 (1917), it was held that the provisions requiring filing could be taken advantage of by subsequent lienors only, and could not be invoked for their benefit by a judgment creditor or attaching creditor.

The trustee cannot take advantage of the nonfiling of the assignment of January 23, 1930. In re Interstate Paving Co. (D. C.) 197 F. 371.

Under section 47a of the Bankruptcy Act, as amended in 1910 (11 USCA § 75 (a), the trustee was "deemed vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied" "as to all property not in the custody of the bankruptcy court." In re Morris (C. C. A.) 204 F. 770, 771.

The status of the trustee as a judgment creditor holding an execution returned unsatisfied exists as of the date of the filing of the petition in bankruptcy. Bailey v. Baker Ice Machine Co., 239 U. S. 268, 36 S. Ct. 50, 60 L. Ed. 275.

The trustee being vested with the rights, remedies, and powers of a judgment creditor, as of the date of the filing of the peti-

tion in bankruptcy, cannot attack an assignment which has not been filed.

Plaintiff contends, however, that as the filing of an assignment of January 23, 1930, was permitted by section 16 of the Lien Law of the state of New York, omission to file brings it within the operation of section 60b of the Bankruptcy Act (11 USCA § 96 (b).

This contention cannot be based upon section 60b as it reads, for the reason that by its terms the four months' period commences from the recording or registering of the transfer, "if by law recording or registering thereof is required." It does not say, "required or permitted," but simply "required."

Section 60b has not been amended, but section 60a was amended in 1926 (11 USCA § 96 (a) by including a transfer within four months of bankruptcy, which period does not expire until four months after the registering or recording of the transfer, where such transfer is required or permitted. The words "or permitted" are new. The same words are found in section 3b (11 USCA § 21 (b).

Prior to the amendment of section 60a, section 60b had been construed in Carey v. Donohue, 240 U. S. 430, 36 S. Ct. 386, 389, 60 L. Ed. 726, L. R. A. 1917A, 295, wherein it was held that, where the failure to record or register the transfer does not make the transfer void as to creditors, but only to bona fide purchasers or incumbrances, the date of the recording is not the date from which to compute the four months, but the case stands precisely as if recording or registering were not required. See, also, Telford v. Hendrickson, 120 Minn. 427, 139 N. W. 941, 31 A. B. R. 866, decided before the 1926 amendment of section 60a, and Heiman v. Parnass (D. C.) 40 F.(2d) 558, decided after such amendment.

Plaintiff contends that section 60a, as amended in 1926 (11 USCA § 96 (a), and section 60b (11 USCA § 96 (b) must be read together, and that Congress intended to apply the same measure to the definition, 60a, and the trustee's right of avoidance, 60b, and cites in support thereof Gilbert's Collier on Bankruptcy (2d Ed. 1931) p. 878, and Matter of Bowles, 14 A. B. R. (N. S.) 133 (referee's opinion).

The weight of authority seems, however, to be against plaintiff's contention. First National Bank v. Live Stock National Bank, 31 F.(2d) 416, 419, in which the Circuit Court of Appeals of the Eighth Circuit said: "The 1926 amendment changed only section 60a and not 60b. It simply made a preference as defined in this section conform to sec-

tion 3b, and did not in any way change the rule with reference to preferences that were voidable."

This distinction was recognized in Carey v. Donohue, supra, where the court said: "Congress did not undertake in section 60 to hit all preferential transfers (otherwise valid) merely because they were not disclosed, either by record or possession, more than four months before the bankruptcy proceeding."

It therefore seems to me that the assignment as to the $40,000 was of the date of January 23, 1930, and not within the four months' period prior to the filing of the petition in bankruptcy herein.

4. Unquestionably the defendant Wenzel, creditor, was by the transfer enabled to obtain a greater percentage of his debt than other creditors in the same class.

5. This brings us to a consideration of the last of the five elements hereinbefore enumerated.

I shall not only consider whether the creditor, the defendant Wenzel, had reasonable cause to believe that the enforcement of the transfer would effect a preference, but also whether the defendant bank had such notice.

I shall consider the question with reference to the defendant bank, first, because if it should be held that I am in error in finding that the defendant bank was not a creditor, and did not receive payment of a debt from the bankrupt, then the defendant bank could not be held liable, unless it be shown that it had such reasonable cause to believe; and, second, because if the defendant bank be held to have acted on behalf of the defendant Wenzel, or as trustee for the benefit of the defendant Wenzel, such reasonable cause to believe on the part of the bank might be imputed to the defendant Wenzel.

Again, there may be suspicion of knowledge by the defendant Wenzel as to the financial condition of the bankrupt, there certainly appears to be none as to the defendant bank; but that is not sufficient, nor would it be sufficient even to show that the defendant Wenzel had a mere suspicion of insolvency of the bankrupt. Grant v. National Bank, 97 U. S. 80, 82, 24 L. Ed. 971.

That the defendant Wenzel was a friend of long standing of the members of the Werner family is conceded, but that does not create any presumption against the defendant Wenzel, the creditor. Marshall v. Nevins (C. C. A.) 242 F. 476.

That he actually loaned to the bankrupt the moneys represented by the notes for $45,000, which were repaid to him, is clearly shown.

The loan originally for $50,000 was made by the defendant Wenzel to the bankrupt, at the request of William Werner, Sr., president of the bankrupt, to enable it to carry out a state contract which its officers considered a profitable contract.

The defendant Wenzel did not have sufficient cash, and therefore borrowed it from the defendant bank, which he at the time informed of his intention to loan the money to the bankrupt, and which he also informed of the arrangement that, as the money was received from the state, the loan would be paid off.

That such was the arrangement is shown by the fact that, while Wenzel's note to the bank was made payable at a fixed date, the note from the bankrupt to the defendant Wenzel was made payable on demand; and further by the fact that when the bankrupt, in July, 1930, received a payment of approximately $129,000 on the state job, it immediately reduced the loan by a payment to the defendant Wenzel of $25,000, by check, which he in turn gave to the defendant bank in reduction of his note, which was not due until October.

The evidence shows that the work on the state job continued without trouble or interruption, and in January, 1930, was substantially completed, and an early payment from the state was expected.

In the meantime the defendant Wenzel had loaned additional money to the bankrupt, some of which had been repaid, but the balance to him from the bankrupt, and from him to the defendant bank, was $45,000.

There is no evidence in this case on which could be founded any claim that the defendant Wenzel or the defendant bank, at the time of the making by the bankrupt of the assignment to the defendant bank on January 23, 1930, had reasonable cause to believe that the enforcement of the assignment would effect a preference.

All of the loans made to the bankrupt by the defendant Wenzel, and the very fact that such assignment by the bankrupt was a voluntary act, not requested by either the defendant bank or the defendant Wenzel, clearly confirm such finding.

The defendant Wenzel was not familiar with the books or the business affairs of the bankrupt, and there is no evidence which shows that he knew of any entries in its books or of its indebtedness.

The evidence shows that he received no money for the making of the loans and had no financial interest in the corporation. All that was paid to him by the bankrupt was interest on his loans to it, which he paid to the defendant bank for the loans to him.

Counsel for the plaintiff contends that such a condition is so unusual as to make the story improbable.

This does not seem to me to be true, as the defendant Wenzel was certainly not the first man to assume obligations to assist a friend whom he trusted.

All that the defendant Wenzel received for himself, as appears from the evidence, was a subcontract from the bankrupt for work done for a concern other than the state, at Jones Beach, for which the defendant Wenzel was paid in full, and on which the bankrupt made a profit.

■ If as I believe the transfer was made by said assignment of January 23, 1930, there would be no need to consider further, as whatever happened after that would not be of moment. Chapman v. Hunt (C. C. A.) 254 F. 768; Sexton v. Kessler & Co., 225 U. S. 90, 32 S. Ct. 657, 56 L. Ed. 995.

If, however, there be any question, I will consider the question with reference to the date of March 7, 1930, when without any request by either the defendant bank or the defendant Wenzel the bankrupt executed the confirmatory assignment which it filed in the proper office.

Nothing is shown in the evidence which would warrant a finding that either the defendant Wenzel, or the defendant bank at that time had any reasonable cause to believe that the enforcement of the transfer would effect a preference.

■ On March 15, 1930, in response to a suggestion from the defendant bank, the defendant Wenzel obtained from the bankrupt a statement in writing, which showed it to be solvent. Neither defendant had any reason to doubt the statement, and certainly the defendant Wenzel did not doubt William Werner, Jr., whom he trusted, as is shown by the loan he subsequently made to him, and the defendants were justified in believing that the state of solvency disclosed by that statement was correct. Irving Trust Co. v. Bank of United States (C. C. A.) 54 F. (2d) 535, 537.

The same is true as to March 22, 1930, when the two checks were sent by the bankrupt to the defendant Wenzel, and as to March 25, 1930, when they were delivered by him to the defendant bank with the letter of the bankrupt.

The statement of the bankrupt of the 15th day of March, 1930, having been received and relied on by the defendant Wenzel and the defendant bank, and they not having received any information of any change in the bankrupt's financial condition, and not having been put on notice, they certainly did not have reasonable cause to believe that the charging of the $5,000 check to the bankrupt's account, on April 11, 1930, would effect a preference.

■ Final payment on the state contract was held up pending the completion of a small amount of work on the contract and the filing of the liens that were bonded, or for which checks were drawn and given to the defendant bank, was not sufficient to put the defendants on notice, and the fact that the defendant bank guaranteed the payment of the liens, for which it received the checks, is sufficient of itself to show that the defendant bank had no doubt of the solvency of the bankrupt and had no reasonable cause to believe that the enforcement of the transfer would effect a preference.

The fact that the defendant Wenzel went to Jones Beach, twenty-five minutes distant from his home, partially for pleasure, and assisted the bankrupt to finish the job, was a perfectly natural thing, considering that only on receipt of the final payment on that job would his note be paid.

There is no evidence that on May 31, 1930, or at any time prior thereto, either defendant knew of any change in the financial condition of the bankrupt from that of March 15, 1930, except that its debts were reduced by the payments made from the proceeds of the Avenue Z, Sheepshead Bay job, which were deposited on April 10, 1930.

The first evidence of insolvency was the statement of the bankrupt's accountant, made in June, 1930, as of May 31, 1930, of which neither defendant had any notice before the payment of the $40,000 was made on May 31, 1930.

Plaintiff makes some point of the fact that the defendant Wenzel made a loan of $5,000 to William Werner, Jr., when he disassociated himself from the bankrupt and started in business for himself, but, instead of showing knowledge or belief of the insolvency of the bankrupt by the defendant Wenzel, it shows confidence in the Werners which I cannot believe the defendant Wenzel, then holding the bankrupt's note for $40,000, would have had if he had then had reasonable cause to believe that the bankrupt was insolvent and that the transfer to him of the $40,000 would effect a preference.

992

, All that has been said here with reference to section 60b of the Bankruptcy Act applies as well to section 15 of the Stock Corporation Law of the state of New York, as amended in 1929, so much of which as is necessary for consideration reads as follows:

"§ 15. *Prohibited transfers to officers, stockholders, directors or creditors.* No corporation which shall have refused to pay any of its notes or other obligations, when due, in lawful money of the United States, nor any of its officers or directors, shall transfer any of its property to any of its officers, directors or stockholders, directly or indirectly, for the payment of any debt, or upon any other consideration than the full value of the property paid in cash. No conveyance, assignment or transfer of any property of any such corporation by it or by any officer, director or stockholder thereof, nor any payment made, judgment suffered, lien created or security given by it or by any officer, director or stockholder when the corporation is insolvent or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors of the corporation, shall be valid, except as to any rights or interests which may be acquired thereunder by any person without notice or reasonable cause to believe that such conveyance, assignment, transfer, payment, judgment, lien or security would effect a preference, and except also that laborers' wages for services shall be preferred claims and be entitled to payment before any other creditors out of the corporation assets in excess of valid prior liens or incumbrances. * * * * "

This statute not only requires, in the case of creditors not officers, directors, or stockholders, proof of insolvency, or imminence of insolvency, but also proof that the recipient had notice or reasonable cause to believe that a preference was intended.

No proof such as is required under that statute was offered.

The petition in bankruptcy was not filed herein until over five months after the assignment of January 23, 1930, and over one month after the check for $40,000, on May 31, 1930, was charged against the bankrupt's account.

Plaintiff has failed to sustain the burden of proof which rested upon him.

The defendants are entitled to a decree dismissing the bill of complaint as to each of them, but, under all the circumstances, without costs. Settle decree on notice.

Submit proposed findings of fact and conclusions of law in accordance with this opinion, for the assistance of the court, as provided by the rules of this court.