THE UNION NATIONAL BANK OF TROY, Respondent, *v.* EDWARD W. SCOTT, Appellant.

*Corporate note, what is — liability of a director for a failure to file an annual report — he cannot avail himself of irregularities in his election — common-law proof that he was a stockholder — the statute requiring the filing of the oath of inspectors of election is directory — what does not constitute a resignation.*

A promissory note stating " we promise to pay to the order of ourselves," etc., signed,

"HUDSON VALLEY KNITTING CO.,
       " F. A. FALES, *Treas.*"

and indorsed,

      "HUDSON VALLEY KNITTING Co.,
            " F. A. FALES, *Treas.*
   " F. A. FALES,
   " K. B. DOWSLEY."

is the note of the corporation and not the individual note of Fales and Dowsley. Section 29 of the Stock Corporation Law (Laws of 1892, chap. 688), providing that the stock book of a corporation " shall be presumptive evidence of the facts therein so stated in favor of the plaintiff, in any action or proceeding

against such corporation, or any of its officers, directors or stockholders," does not make the stock book the only competent evidence of such facts or preclude the plaintiff, in an action brought against a director of a corporation which neglected to keep a stock book, from showing, by common-law evidence, that he was a stockholder and was thus qualified to act as director.

Section 28 of the Stock Corporation Law, requiring the oath of the inspectors of election at a stockholders' meeting to be filed in the office of the clerk of the county in which the election is held, is directory only, and a failure to comply therewith does not invalidate the election.

A person elected a director of a corporation, who accepts the office and thereafter exercises the duties pertaining thereto, cannot avail himself of irregularities in his election as a defense to an action brought to charge him, as a director of the corporation, with liability for its failure to file an annual report.

A statement made by a director of the corporation to the secretary and to the treasurer thereof, that if they were not satisfied with the manner in which the firm, of which he was a member, was selling goods manufactured by the corporation, they could remove the account, and that in that case he would have nothing more to do with the management of the corporation — followed by a change by the corporation in its selling agent and the withdrawal by such director from further conference with the other directors in its management, although he subsequently signed an annual report of the company and thereafter made a certificate and individual report — cannot be construed as anything more than a threat to resign his office as director.

APPEAL by the defendant, Edward W. Scott, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Rensselaer on the 12th day of August, 1899, upon the decision of the court rendered after a trial before the court without a jury at the Rensselaer Trial Term.

*J. K. Long*, for the appellant.

*J. S. Wheeler*, for the respondent.

Judgment affirmed, with costs, on opinion delivered by the trial judge.

All concurred, except EDWARDS, J., not sitting.

The following is the opinion delivered by the trial judge :

EDWARDS, J. :

This action is brought against the defendant, as a director of the Hudson Valley Knitting Company, upon the statutory liability for a failure to make and file an annual report.

The Hudson Valley Knitting Company was incorporated in

November, 1877, under chapter 40, Laws of 1848, and the acts amendatory thereof. The defendant was one of the signers of the certificate of incorporation and one of the trustees named therein for the first year. The place designated in the certificate in which the operations of the company were to be carried on is Waterford, in the county of Saratoga, and the annual meetings of stockholders for the election of trustees were held at that place until and including the meeting held in February, 1883, and thereafter were held in the city of Troy in pursuance of a resolution adopted at each previous meeting, except that the minutes do not show any such resolution passed at the meeting held in February, 1892. From 1883 to 1894, except the year 1889, meetings of the trustees were annually held for the election of officers, and such meetings after 1883, except the one in the year 1888 held in Waterford, were held in the city of Troy. The last meeting of the stockholders was held on February 6, 1894, and the last meeting of the trustees was held on the same day. The defendant attended each of said stockholders' meetings and at each was elected a trustee, and also attended each of said meetings of trustees for election of officers, and at each was elected president. The particular place of business of the company was in Waterford, where it had an office and it also had an office in the city of Troy. The company did not file an annual report in 1895 nor in 1896. On May 1, 1896, an action was commenced by the People of the State against the company for a dissolution of the corporation, on the ground that it had been insolvent for more than a year. On May fourth an order was granted in said action enjoining creditors of the corporation from bringing or prosecuting any action against the company. On October 6, 1896, a judgment was granted dissolving the corporation and restraining it from exercising any of its corporate powers and franchises and enjoining all persons from commencing any action or proceeding against the corporation, which judgment was entered in the Saratoga county clerk's office on the 13th day of October, 1896.

In December, 1894, the defendant, who was a member of the firm of Scott Bros., commission merchants in New York, had a conversation with Mr. Dowsley, the secretary, and with Mr. Fales, the treasurer of the corporation, and the trustees who had principally the management of the business, in respect to the sale by the defend-

ant's firm of the goods of the company on commission, in which conversation the defendant told Messrs. Dowsley and Fales that if they were not satisfied with the manner in which defendant's firm was selling the goods and the commission charged they could remove the account to a broker, and in that case the defendant would not have anything more to do with the management of the mill when he was not selling the goods. Messrs. Dowsley and Fales came to the conclusion that it was better to sell the goods of the mill in some other way than through the defendant's firm, and the arrangement theretofore existing between the mill and defendant's firm then terminated. Thereafter the defendant did not confer with his associates in the business as to the management of the company nor as to the purchase of goods for the mill, nor of machinery, and did not attend any meeting of the board, and no members of the board, except Dowsley and Fales, thereafter had anything to do with the management of the company. In the early part of the year 1895 the defendant signed an annual report of the company and sent it to Troy or to Waterford to some of the officers of the company to be filed, but the same was not filed. On May 18, 1896, the defendant made a certificate and individual report as a director of the corporation, which was verified on that day and filed on the 19th of May, 1896, in the office of the Secretary of State. This certificate of the defendant stated that he was president of, and a director of, the Hudson Valley Knitting Company; that he had endeavored to have the annual report of the company made and filed as required by law; that such report was prepared and signed and acknowledged by him pursuant to law, and sent by him to the secretary to be filed, but that the secretary had neglected and refused to file such report. The verification made by the defendant stated that he was the president and director of the Hudson Valley Knitting Company. No certificate and individual report was filed by the defendant in the year 1895. On October 10, 1895, the company made its promissory note, of which the following is a copy:

" $5,000.                   TROY, N. Y., *Oct.* 10*th*, 1895.

" Four months after date we promise to pay to the order of ourselves Five thousand dollars, at The National Bank of Troy, for value received.        HUDSON VALLEY KNITTING CO.,

"F. A. FALES, *Treas.*"

This note was indorsed as follows:

> "HUDSON VALLEY KNITTING Co.,
> > "F. A. FALES, *Treas.,*
> > > "Troy, N. Y.
>
> "K. B. DOWSLEY,
> > "Troy, N. Y.
>
> "F. A. FALES,
> > "Troy, N. Y."

and so indorsed was delivered to the plaintiff, who, on the day of its date, discounted the same for the Hudson Valley Knitting Company, and the proceeds thereof were paid over to the said company and by it deposited to its credit in The National Bank of Troy, where the said company kept its account. At the time of the making of this note F. A. Fales was, and during the existence of the corporation continued to be, the treasurer of the Hudson Valley Knitting Company, and had charge of its financial and banking matters. This note was renewed from time to time by notes of the said company similarly made and indorsed, the last of which, dated April 3, 1896, for $4,900, $100 having been paid on the principal, reads as follows:

> "$4,900.        ·        TROY, N. Y., *April 3rd*, 1896.
>
> "One month after date we promise to pay to the order of ourselves Forty-nine hundred dollars, at The National Bank of Troy, for value received.
> > "HUDSON VALLEY KNITTING CO.,
> > > "F. A. FALES, *Treas.*"

This note was indorsed

> "HUDSON VALLEY KNITTING Co.,
> > "F. A. FALES, *Treas.*
>
> "F. A. FALES,
> "K. B. DOWSLEY."

and was on its date delivered to the plaintiff, who is now the owner of the same, and no part thereof has been paid, except $572.71 paid by the receiver of the Hudson Valley Knitting Company on July 29, 1898. To recover the amount due on this last note, given in renewal of the indebtedness of the Hudson Valley Knitting Company to the plaintiff contracted on October 10, 1895, during which year no report was filed, this action has been brought.

The alleged liability of the defendant arises by virtue of the provisions of section 30 of the Stock Corporation Law (Laws of 1892, chap. 688) which require a stock corporation to make and file in the office of the Secretary of State and in the office of the county clerk of the county where its principal business office may be located, an annual report, and provides that " If such report is not so made and filed, all the directors of the corporation shall jointly and severally be personally liable for all the debts of the corporation then existing, and for all contracted before such report shall be made."

It is well settled that this statute is a highly penal one, and that to establish a liability created by it, every fact upon which the right to recover against a director depends must be affirmatively proven. (*Whitney* v. *Cammann*, 137 N. Y. 344.) It is in the light of this principle that the questions presented in this case should be considered and determined. The right to maintain the action depends upon the existence of three facts : the failure to make and file a report, a debt against the corporation and the directorship of the defendant at the time of the default. (*Shaler & Hall Quarry Co.* v. *Bliss*, 27 N. Y. 297; *Duckworth* v. *Roach*, 81 id. 49 ; *Gold* v. *Clyne*, 134 id. 262.) The failure to file reports in 1895 and 1896 is conceded. The indebtedness and directorship are controverted. This brings us to the consideration of the question whether a valid indebtedness then existed against the corporation in favor of the plaintiff. If a debt exists against the corporation to which it has no good defense at law or in equity, the statutory liability of the defendant attaches. (*Whitney Arms Co.* v. *Barlow*, 63 N. Y. 62.) The alleged indebtedness arose out of the discounting by the plaintiff for the corporation of the note dated October 10, 1895, for $5,000, which was renewed from time to time and in renewal of which, except $100 paid on the principal, the note of April 3, 1896, for $4,900 was given. It is maintained by the defendant that these notes were upon their face not the notes of the Hudson Valley Knitting Company, but the individual notes of Fales and of Dowsley, but I think it is well settled by the authorities that they are the notes of the corporation. They are signed in the name of the corporation by F. A. Fales, the treasurer, who had authority to make them. Furthermore, the original note was given to the plaintiff in consideration of the proceeds of the same received by the defendant which were placed to its

credit in its account with The National Bank of Troy. It is too clear for discussion that this transaction of the 10th of October, 1895, constituted an indebtedness of the Hudson Valley Knitting Company to the plaintiff, and in an action brought by the plaintiff against that company on the renewal note of April 3, 1896, the company would have no defense whatever. The indebtedness existed when the corporation was in default for not filing its report for 1895.

The defendant further maintains that the proof fails to show that he was a director of the Hudson Valley Knitting Company at the time of the failure to file the annual report. One of the grounds for this contention is, that it was essential to his election as a director in February, 1894, that he was then a stockholder, and that the only evidence of who are stockholders of a corporation is the stock book provided for by section 29 of the Stock Corporation Law, which book was not produced in evidence. That section requires that every stock corporation shall keep a book to be known as the stock book " containing the names, alphabetically arranged, of all persons who are stockholders of the corporation, showing their places of residence, the number of shares of stock held by them respectively, the time when they respectively became the owners thereof, and the amount paid thereon." It further provides that such book " shall be presumptive evidence of the facts therein so stated in favor of the plaintiff, in any action or proceeding against such corporation, or any of its officers, directors or stockholders." While this statute makes the stock book "*presumptive* evidence " of who are stockholders in an action against any of its directors, it does not make it the only evidence. The Hudson Valley Knitting Company did not keep the stock book required by this statute, and the neglect to keep such a book cannot exclude common-law evidence of who are stockholders. In this case it was clearly proved by competent common-law evidence that the defendant was a stockholder. It is also contended by the defendant that his election as a director in February, 1894, was void, for the reason that the meeting of the stockholders for the election of trustees was held in Troy and not at Waterford; and for the further reason that the inspectors of election did not file their oath of office in Rensselaer county. Section 20 of the Stock Corporation Law provides that " The directors of every stock corporation shall be chosen from the

stockholders at the time *and place fixed by the by-laws* of the cor-
poration." There is no other statute prescribing the place of meet-
ing of stockholders. The by-laws are not in evidence, and it does
not appear that Troy is not the place fixed by the by-laws. It does
appear that the company had an office in Troy, and that all of the
meetings of the stockholders for the election of directors after 1883
were held there. The statute requiring the oath of inspectors to be
filed in the office of the clerk of the county in which the election is
held (§ 28, Stock Corp. Law) is directory only, and the failure to file
it does not invalidate the election. (*Matter of Mohawk & Hudson
R. R. Co.,* 19 Wend. 135.) Furthermore, the defendant cannot
avail himself of irregularities in his election as a director at the
stockholders' meeting in February, 1894, for the reason that he was
at least a *de facto* director. He was present at the stockholders'
meeting in February, 1894, and also at the meeting of the trustees
held thereafter on the same day for election of officers, accepted the
office and thereafter exercised the duties of a director. Having
accepted the office and exercised its duties he cannot escape its
responsibilities. He was a director to whom the liability created by
the statutes attaches. (*Donnelly* v. *Pancoast,* 15 App. Div. 323.)
"The rule of law is well established that he who enters upon an
office and exercises all its functions is responsible for his acts therein
to the same extent as though he of right occupied the position." (Id.)

It is strenuously urged by the defendant that if he were legally
elected a director in February, 1894, his declaration made to Messrs.
Dowsley and Fales in the following December and his non-partici-
pation with them thereafter in the active management of the business
of the company amounted to a resignation, so that on October 10,
1895, when the indebtedness of the corporation to the plaintiff was
contracted, the defendant had ceased to be a director of the company.
I do not think his language susceptible of such a construction. He
testifies that he said to them "I should not have anything more to
do with the management of the mill when I wasn't selling the
goods." Whether this language has reference to his directorship or
to his assisting the manager as he had theretofore done is not cer-
tain, but if it refers to the former it cannot be construed, especially
in the light of his subsequent acts and conduct, as anything more
than a threat to resign in case the goods of the concern should no

longer be sold by defendant's firm on commission. The most reasonable interpretation is that he would not have anything to do with the active management of the mill. But if it may be regarded as referring to the resigning of his office, it cannot be considered as indicating more than a purpose to do so in the future. That it was not regarded by the defendant himself as a resignation is evidenced by the facts that in the early part of 1895 defendant signed an annual report of the company, and again on May 18, 1896, he made a certificate and individual report, signed by him as a director and verified by him, in which he stated that he was president of and a director of the Hudson Valley Knitting Company, and that an annual report had been prepared and signed and acknowledged by him pursuant to law, and sent by him to the secretary to be filed, but that the secretary had neglected to file the same. The language of the defendant in December, 1894, cannot be construed as a resignation of the office of director, and his subsequent acts and declarations are entirely inconsistent with his present contention. It is true that he did not after December, 1894, attend any meeting of the trustees, but it is also true that no meeting of the trustees was thereafter held. In respect to the provisions of chapter 354 of the Laws of 1899, passed April 18, 1899, I deem it sufficient to say that in my opinion they have no application to this case.

I fully appreciate the fact that the penalty imposed by the statute upon a director for the omission to file an annual report is severe, and it may well be doubted whether in this case the plaintiff has sustained any damages whatever in consequence of such omission, but I am of opinion that upon the facts of this case the statutory liability has arisen, and that the plaintiff is entitled to judgment against the defendant in the sum of $4,900, with interest from May 4, 1896, less the sum of $572.71, besides costs.

A decision in accordance with the facts herein stated may be prepared by the plaintiff's attorney and submitted to me for settlement at my chambers on five days' notice to the attorneys for the defendant.