THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* ABE FLEISHMAN, Defendant.

City Magistrates' Court of New York, Borough of Brooklyn, Tenth District, December 17, 1928.

*Louis Oppenheim*, for the plaintiff.

*Jacob W. Rozinsky*, for the defendant.

RUDICH, City Magistrate. The defendant is charged with a misdemeanor under section 1292-a of the Penal Law. The testimony shows that the defendant is the treasurer of Kinzer & Fleishman, Inc., a corporation; that in April, 1927, the corporation borrowed $500 from one Goldstein, hereinafter called the complainant; that in January, 1928, in payment of the loan, the corporation issued its check, signed in the corporation's name by Kinzer as its president and by the defendant as its treasurer; that the check was delivered by the defendant in person to the complainant, who deposited it, but it was returned for insufficiency of funds; that according to the books of the bank upon which it was drawn, the balance in the account of the corporation on the day the check was issued, and for some weeks prior thereto and for some weeks thereafter, was substantially less than the amount of the check.

At the close of the testimony the defendant moved to dismiss the proceeding on the ground that the issuance of the check was the act of the corporation and not his individual act, and that, therefore, he could not be charged personally with the crime.

Section 1292-a of the Penal Law, as amended by chapter 678 of the Laws of 1927, in so far as it is material to the question at issue, reads as follows:

" Any person who, with intent to defraud, shall make or draw or utter or deliver any check * * * upon any bank * * * knowing at the time of such making, drawing, uttering or delivering that the maker or drawer has not sufficient funds in * * * such bank * * * for the payment of such check, although no express representation is made in reference thereto, shall be guilty of a misdemeanor, and if money or property is obtained from another thereby is guilty of larceny and punishable accordingly.

" In any prosecution under this section as against the maker or drawer thereof, the making, drawing, uttering or delivering of a check, * * * payment of which is refused by the drawee because of lack of funds * * * shall be *prima facie* evidence of intent to defraud and of knowledge of insufficient funds in * * * such bank."

The first question that arises is this: What relation does the defendant bear to this check? Clearly he is not the maker or the drawer, because this is the corporation's check. True, the defendant's signature appears at the foot of the instrument, but only after the corporation's name, and his title as treasurer follows his signature. He signed his name only in a representative capacity, in the same way as the president did; that is, solely for the purpose of giving effect to the instrument as the act of the corporation. In a civil suit on this check neither the defendant nor the president could be joined as maker or drawer. (Neg. Inst. Law, § 20; *Union National Bank* v. *Scott*, 53 App. Div. 65.) Certainly in a criminal proceeding, where stricter rules of construction are applied, this representative capacity of the defendant cannot be so twisted as to place him in that category.

Next, did the defendant utter this check? The term " utter " with respect to negotiable instruments means " to offer; to put out; to pass off; to sell; to vend." (39 Cyc. 1101.) In Words & Phrases (Vol. 8, p. 7251) are found numerous decisions holding that to utter an instrument there must be some declaration, directly or indirectly, by words or actions, that it is good. There must be involved the element of negotiation of the check; some benefit, expectant or realized, flowing directly to the transferror from the act of passing the instrument. Here the transaction centering around the complainant's receipt of the check constituted in its entirety an attempt to pay a pre-existing debt of the corporation, not the defendant's personal debt; the check was drawn to the order of the complainant; the defendant did not indorse it; and no benefit accrued to him from the complainant's acceptance of the check except the indirect one resulting from the fact that a corporation in which he was interested was to be relieved of one of its liabilities. The whole transaction was a corporate one; the corporation not only made and drew the check, but thus, through one of its officers, it also " uttered " the check.

Next, did the defendant " deliver " the check? Here again we are confronted with the technical, legal definition of a word as distinguished from its popular meaning. In section 2 of the Negotiable Instruments Law, delivery is defined as the " transfer of possession, actual or constructive, from one person to another." The words " actual or constructive " are significant. They warn us at once that what is meant by delivery in the law merchant is not always the mere physical or manual transfer of the paper from one person to another, for as we see, there may be a " constructive " transfer of possession, a " delivery " in the eyes of the law, even though the paper actually remains in its original place.

Here the check was handed to the complainant by the defendant, but since it was drawn to the complainant's order, the defendant, though in physical possession of the instrument, had no legal possession, for he had no right to the proceeds. When the complainant accepted the check from the defendant, at that moment there took place an actual " transfer of possession," which is a " delivery " in the legal sense, but that delivery was made by the corporation in thus transferring its legal possession, and not by the defendant. If the check had been sent by a messenger, is it contended that the latter would be chargeable with the crime as one who had delivered a check drawn upon insufficient funds? It is apparent that what is here meant is not the bare physical act of manual delivery, but the formal act defined in the Negotiable Instruments Law, a legal concept somewhat akin to the delivery of a deed as it is known in the law of real property, and that act was performed by the corporation in this case.

I therefore hold that when a corporation issues its check in payment of a corporate debt owing to the payee, which check is not honored for lack of funds or credit, none of the officers who signed it in their representative capacity may be prosecuted under section 1292-a of the Penal Law, because none of them can be regarded as either a maker, drawer, utterer or deliverer of the check. Whether the corporation itself can be brought to bar criminally need not be decided here. That there is ample authority for proceeding against the corporation appears from *People* v. *Rochester Railway & Light Co.* (195 N. Y. 102) and from *People* v. *Canadian Fur Trappers Corp.* (248 id. 159) and cases there cited.

I am aware that in *People* v. *Siman* (119 Misc. 635) the County Court of Montgomery county upheld an indictment based on this section against the president and the treasurer of a corporation who signed a check in the corporation's name. The precise question, however, as to whether the officers were personally liable is not discussed in the opinion; evidently it seemed to have been taken for granted. Nevertheless, if that case be cited as tending to support that proposition, I respectfully decline to follow it.

It may be urged that in thus construing this section, the door is opened to fraud by persons who may shield themselves behind the corporate entity. An answer to that argument is that one who deals with a corporation usually foregoes recourse against the officers personally. If the men who signed this very check are immune from personal liability in a civil suit based on the check, if they may retain their individual fortunes unto themselves and laugh to scorn the efforts of general creditors of the corporation to reach those private assets to satisfy corporate liabilities, does

it shock our sense of justice to hold that in a criminal proceeding, too, the separate corporate entity may be set up as a bar to personal prosecution? Doubtless conditions might arise when, by reason of representations made in connection with the issuance of the check, officers of a corporation may lay themselves open to the charge of larceny in obtaining property by false pretense, but in the absence of such or other special circumstances, the fact that the instrument is a corporate one must operate to defeat a criminal proceeding against the individuals under this section.

In construing this statute, we must bear in mind that we have before us a somewhat unusual law. If A is indebted to B and cannot meet the obligation when it is due, B's remedy is by civil action; he cannot invoke the aid of the criminal courts. If, to forestall the civil suit, A gives his promissory note payable at his bank and if, on the due date of the note, A's funds or credit in his bank are sufficient to meet it, the note is paid by the bank; if not, B is still confined to a civil suit, either on the note or on the original indebtedness. The litigation is still private, with B as the plaintiff and A as the defendant. But should A attempt to discharge the debt by his check, which is dishonored by his bank for lack of funds or credit, then the matter takes on a new aspect; the Penal Law is invoked; the machinery of the criminal courts comes into action; the State now becomes the aggrieved party and B is only the complaining witness, who may be compelled to testify against his will; the district attorney is now empowered to step in, representing the State — in short, a crime has been committed. Doubtless the startling features of this law may be defended on the ground that they are necessary for the protection of business dealings; no objection has been raised, and possibly none can be raised, on constitutional grounds. Nevertheless the fact remains that this section is something new in the criminal law, though it closely resembles what used to be known, and abhorred, as " imprisonment for debt " in the civil law.

Representing, as it does, a radical departure from our established ideas as to what constitutes a crime, we must scrutinize this section somewhat carefully; certainly we should not be too ready to extend its drastic provisions to a large class of persons not expressly specified therein, unless by the wording of the statute the intention to include them is plainly indicated. At this point, comparison with other provisions of the Penal Law is helpful, for it shows that it would not have been difficult to so phrase the section as to leave no room for doubt. For example, section 1293-b of the Penal Law (as amd. by Laws of 1921, chap. 306) makes it a misdemeanor for a person to furnish a false written statement

regarding the financial condition " of himself, or any other person, firm or corporation, in whom he is interested " for the purpose of obtaining credit " for the benefit of either himself or of such person, firm or corporation." When phraseology like that is used, there is no uncertainty; an officer signing such statement cannot plead that he did so in a representative capacity and that only the corporation profited by his act. Another example is section 390 of the Penal Law, which relates to bucket shops; it begins with the following: " Any person, copartnership, firm, association or corporation, whether acting in his, their or its own right, or as the officer, agent, servant, correspondent or representative of another, who shall," etc.

In the statute we are considering, however, no such wording appears. I am mindful that section 21 declares that the provisions of the Penal Law are not to be strictly construed, but does that call for an interpretation so wide and so liberal as to embrace within the terms of a statute those to whom no reference is made by name or by description? I do not think so. In the absence of a clearer declaration of the legislative intent, the point that this strict construction may give comfort to persons of evil mind finds its complete answer in this oft-stated pronouncement: under our system of government courts do not make laws: they interpret them; it is for Legislatures to attempt to prevent abuses by new enactments or by amendment of existing statutes.

For the reasons above stated, the defendant is discharged.