THE PEOPLE OF THE STATE OF NEW YORK on the Complaint of FRANK BELLECI, Complainant, *v.* SARAH KLINGER, Also Known as SARAH EISENBERG, Defendant.

City Magistrates' Court of New York, Borough of Manhattan, Fourth District, September 30, 1937.

*Benjamin N. Brody,* for the complainant.

*Lind, Shlivek, Marks & Brin* [*Norman L. Marks* of counsel], for the defendant.

BROMBERGER, Magistrate.    The defendant, secretary of Klinger & Co., Inc., a domestic corporation, is charged with violation of sections 1290 and 1302 of the Penal Law.

By an undated lease, Klinger & Co., Inc., demised to the complainant a vacant plot in New York city, for the term of one year, commencing May 1, 1936.

For his faithful performance of the terms of the lease, the tenant deposited with the landlord security in the sum of $650, of which $290 had been previously posted under a prior and expiring lease, and the balance of $360, paid on April 23, 1936, by check subsequently indorsed in the corporate name by the defendant as its secretary.

The $290 were turned over by the complainant to the defendant and her husband, John Klinger, both of whom were present at the time.    The complainant, however, is not definitely certain to which of the two he then handed the money.

During the time that these leases were effective, Klinger & Co., Inc., was itself a tenant of the owner of the fee; hence, the complainant became in reality a sublessee.

The defendant, wife of John Klinger, owns fifty per cent of the capital stock of Klinger & Co., Inc., and is one of the directors and the secretary.    Demand for the return of the security was made upon her personally as secretary and its return refused by her.

Defendant rested at the conclusion of the People's case.

The defendant seeks to justify retention of the security principally upon the ground of an alleged collateral agreement which she attempts to establish, not by her testimony or that of any other witness, but by the introduction into evidence during complainant's cross-examination, of a pleading in a civil action now pending undetermined in the City Court of the City of New York.    The record is otherwise barren of any proof supporting that complaint since the defendant failed to take the stand or offer any affirmative testimony in her behalf.

The complaint in the civil action alleges an agreement entered into between the complainant and the corporation in February, 1937, whereby Klinger & Co., Inc., was to refrain from negotiating with or procuring from the fee owner a lease of the premises for an

additional term commencing May 1, 1937, and was to allow the defendant the opportunity of negotiating with the owner for a lease directly to him as tenant; that in consideration of the corporation's agreement, the complainant agreed that if and when he, or a corporation organized by him, procured such lease directly, then the complainant would pay to Klinger & Co., Inc., a sum equivalent to seventy-five dollars for each month of the term of said new lease, such payment to be made immediately upon the signing of said lease.

It is alleged that the complainant procured a lease directly for a term of two years commencing May 1, 1937, immediately following the termination of his lease with Klinger & Co., Inc., and, as a result, the corporation claims the sum of $1,800 from the complainant.

The complainant, testifying before me, denied any such alleged collateral agreement. The defendant failed to take the stand herself to testify to the agreement, nor did she offer any witnesses to prove it. Her attempt to establish the alleged agreement rests solely upon the introduction into evidence of the pleading in the civil action.

It would be indeed a novel doctrine in a prosecution to permit a self-serving declaration or mere pleading in a civil action to substitute for the personal affirmation of the party with the consequent test of cross-examination. Pleadings, in and of themselves, unsupported by competent evidence of probative force, cannot serve as an anvil upon which to forge a defensive armor in a criminal prosecution.

The alleged collateral agreement is claimed by the defendant to have been an oral one. I conclude that the weight of the sum of the evidence before me is to the effect that no such agreement was ever made by the parties. Nevertheless, for this prosecution, it is wholly immaterial, as I shall presently indicate, whether or not the alleged agreement ever assumed legitimate creation.

The defendant further suggested the rather tenuous contention that the complainant had failed to pay the rent during one of the months of the term of the lease under which the security had been deposited. This rent, in any event, was eventually paid and the relationship of landlord and tenant between Klinger & Co., Inc., and the complainant continued for some time thereafter until the termination of the lease on April 30, 1937.

I hold that no breach of the lease has here been established to justify the defendant's refusal to return the security and appropriating it against the alleged damages arising upon the claimed collateral agreement. Even had the failure to pay the month's

rent been established by competent testimony, it would not, under the facts and circumstances, constitute a defense in this prosecution.

To dispose of the questions here presented, however, I pass to a consideration of the defendant's contentions.

Defendant urges, as a matter of law, that she is not individually answerable in this prosecution for the refusal to return the security to the complainant; that if there be any criminal responsibility, it is the corporation alone which should be charged.

Defendant's objection is untenable. Corporate officers may be criminally liable for their own acts although performed in their official capacity as such officers. (*People* v. *Cooper*, 200 App. Div. 413; 3 Fletcher on Corporations, p. 877.)

Accordingly, an officer of a corporation, through whose act the corporation commits an offense or crime, is himself also individually guilty.

*People* v. *Clark* (14 N. Y. Supp. 642, at p. 655): "The result, therefore, seems to be that where a statute prohibits the doing of an act by a class of persons, and makes any violation of that act a misdemeanor, all active participants in such violation are equally guilty, be they directors or other agents or servants of the corporation; the directors not because they are directors, but personally; no individual, however, being liable who does not personally participate in the doing of the act, or in the aiding, and abetting of the doing of the act."

While a corporate officer, without regard to his position, is ordinarily not liable for corporate acts performed by other officers or agents of the corporation, nevertheless he is answerable where scienter or authority on his part are established, or where he is the actual, present and efficient actor behind the corporation. (*People* v. *Brainard*, 192 App. Div. 816.)

This legal principle is succinctly enunciated in 1 Bishop on Criminal Law ([9th ed.] p. 308): "Though a corporation is indictable for a particular wrong, the individual members and officers who participate in it may also be indictable for the same act."

*People* v. *Fleishman* (133 Misc. 288) and *People* v. *Shatzkin* (221 App. Div. 602), cited by the defendant, are neither of them decisive upon the liability of defendant in the present case, and both are readily distinguishable.

In the *Fleishman* case the defendant signed checks in his representative capacity and when they were dishonored for lack of funds, it was sought to hold him under section 1292-a of the Penal Law. The court held that the defendant did not come within the statute, in that he did not himself "make," "draw," "utter" or "deliver" the check. The decision was based upon the failure to satisfy the technical requirements of the statute.

Here we have a defendant owning fifty per cent of the stock, and, with her husband, controlling the corporation receiving the security, and herself refusing, upon demand, to return it.

In the *Shatzkin* case an installment contract to purchase land from a corporation of which defendant was the president at the time of his arrest had been entered into several years before he had any connection whatever with the corporation. The complainant defaulted in his payments, and the property was deeded to a third party. Subsequently the complainant cured the default, and entries of this and succeeding payments appeared in the company's ledgers. The defendant then became president of the corporation, and thereafter the complainant made the payment of five dollars which is the subject of the charge. The basis of the court's decision absolving the defendant is indicated in *People* v. *Shatzkin* (221 App. Div. 602, at p. 604): "He did not make the payment to the defendant personally. There is no evidence that defendant had any knowledge of the payment, its specific application, or the fact that the property for which it was made had already been deeded away. * * *. There is no evidence either of defendant's knowledge of the situation or of any wrongful intent on the defendant's part."

In *People* v. *Horowitz* (138 Misc. 794, at p. 800) the magistrate who rendered the decision in the *Fleishman* case, upon which defendant relies so heavily, specifically left open the point as to whether the defendant might set up the corporate entity of the landlord as a defense to the prosecution against him as an officer under sections 1290 and 1302 of the Penal Law: "Since I hold that the landlord's conversion of this fund did not constitute larceny or embezzlement, it is unnecessary to pass on the question as to whether this defendant may set up the corporate entity of the landlord as a defense to this prosecution against him as an officer thereof, under the ruling in *People* v. *Fleishman* (133 Misc. 288) and *People* v. *Shatzkin* (221 App. Div. 602)."

Thus this point was left open in that opinion, and apparently never decided.

I hold now that the corporate entity of the landlord does not preclude individual liability on the part of its officers or agents where their personal knowledge, participation or other element involving personal responsibility, as there defined, are established. This accords with settled principle. There is no good reason for making an exception here, even accepting both the *Fleishman* and *Shatzkin* cases as sound.

Upon the evidence and exhibits, I find that the defendant had **personal knowledge or participated in the receipt and withholding**

of the security to an extent sufficient to fasten personal responsibility upon her in this prosecution.

It may also be noted at this point, parenthetically, that while in determining her guilt, I did not take into consideration the fact that the defendant failed to testify, it is a well-established principle in this State that the court is warranted, under such circumstances, in taking the facts and circumstances which, if innocent, she might have controverted and explained, most strongly against her. (*People* v. *Smith*, 114 App. Div. 513; appeal dismissed, 187 N. Y. 557; *People* v. *Trombino*, 238 App. Div. 61; affd., 262 N. Y. 689.)

Section 233 of the Real Property Law (added by Laws of 1935, chap. 581) provides that money deposited as security " until repaid or so applied, *shall continue to be the money of the person making such deposit or advance* and *shall be a trust fund in the possession of the person with whom such deposit or advance shall be made* and shall not be mingled with other funds or become an asset of such trustee." (Italics ours.)

Prior to the enactment of this statute, the history of New York in civil suits between landlord and tenant based on the disposal of security, was one of gradual elevation of standards required of lessors.

Professor I. Maurice Wormser, in an editorial in the New York Law Journal (Oct. 5, 1926, p. 62), commenting on *Matter of Atlas* (217 App. Div. 38), viewed that case as tantamount to a declaration that the landlord becomes the trustee of the tenant with respect to the security. The Appellate Term, First Department (*Madison Realty Co.* v. *Weiss*, 133 Misc. 318), intimated that it would be possible to construe the relation " as that of a trustee or quasi trustee."

On the criminal side, the matter was far from clear. It was forcefully argued that the gradual elevation of the level of conduct required of and enforcible against lessors civilly should not become the established standard for the measurement of their responsibility in a criminal prosecution. The point was a much mooted one, without any decisive decision of the high court of the State. The inferior courts have varied widely in their dicta. The matter is well brought together, however, in *People* v. *N. W. 5th Ave. & 27th St Corp.* (145 Misc. 778).

Section 233 of the Real Property Law is itself apparently ambiguous, and has as yet received no authoritative interpretation. It provides (a) that the security deposited by the tenant shall continue to be his money until repaid or applied as provided in the statute, indicating that legal title is meant to be retained by him; then (b) that the money is to constitute a " trust fund " for the benefit of the tenant in the hands of the landlord.

It is as if one were to draw parallel lines in the expectation of their convergence. However, it is again not essential to the prosecution which interpretation of the statute is adopted. It is suggested that this statute should not be decisive here. But it must be considered for whatever light it may throw upon sections 1290 and 1302 of the Penal Law under which the defendant is charged.

Defendant in her memorandum suggests that a trust relationship is created but that the statute precludes a decision to the effect that the landlord is a " trustee " under the Penal Law. This is, to my mind, wholly without merit. The defendant's argument is based upon a quotation from *People* v. *Epstein* (245 N. Y. 234) to the effect that the use of the word " trustee " in these Penal Law sections connotes voluntariness and confidence on the part of the parties to the arrangement. With this as a premise, defendant then reasons that the trusteeship created by section 233 is one of operation of law alone and not of agreement, and that, therefore, the conditions laid down by the *Epstein* case cannot be satisfied. This does not follow.

The effect of the statute is to prescribe a certain conduct pattern which I hold fits the instant prosecution. The Legislature has given a name to this conduct; has called it a " trust." It would make little difference here whatever its statutory nomenclature. *People* v. *Epstein* (*supra*) held that for section 1290 a " trustee " was a " person in whom a trust or confidence had voluntarily been imposed and by whom it had voluntarily been accepted." Those conditions are satisfied by the evidence before me.

There is a wide divergence between a declaration of trusteeship by a court of equity, to which the court was there addressing itself when it decided that the statute was not satisfied, and the present situation in which the parties have voluntarily and with confidence entered into this arrangement.

With reference to section 1302, defendant engages in the same specious reasoning characterized by her deductions from *People* v. *Epstein*. That section requires the appointment of the " trustee " by deed, will or other instrument. Defendant seizes upon the characterization of section 233 of the Real Property Law as controlling here and urges that if the corporation be a trustee, it is such only by virtue of that statute, and, therefore, its requirements are not satisfied in this prosecution.

The error in defendant's contention is that of lump concept thinking. She apparently believes that the same words, if used in two different places, must always mean the same thing.

However, it is apparent that " trust " under section 233 does not refer to the same situation as that involved in the designation of

"trustee" in sections 1290 and 1302. If the landlord be a "trustee" under this section, the use of the word "trust" in section 233 with reference to the landlord does not mean that we cannot have under section 1302 a "trustee" who has been appointed by instrument.

In view of the enactment of section 233 of the Real Property Law, I feel that the determination in *People* v. *Horowitz* (*supra*) cannot now be regarded as authoritative upon the facts before me.

It becomes unnecessary, however, to plumb the depths in order to fathom the principle. Even should we determine that the "trustee" requirement of sections 1290 and 1302 not be satisfied, we are not precluded from holding the defendant. Section 1290 covers not only "trustee" but also "a person authorized by agreement." Here again, the *Horowitz* case is the only decision in the field and I am inclined rather to accept and to enforce what seems to me to be the plain language of the statute. The landlord, to my mind, is plainly "a person authorized by agreement" to hold the property. The lease, under which the security was deposited, is certainly such an agreement, and except for it the landlord would never have been authorized to hold the fund.

We next come to a consideration of the right, or color of right, to retain the security for the claimed breach by the complainant of the alleged collateral agreement, leaving aside the evidentiary defects which have previously been indicated.

The landlord-tenant relationship here presented may be characterized as that of debtor-creditor, pledgor-pledgee, or *trustee-cestui*. The statute definitely eliminates the first of these as a possibility. It is obvious that whatever the relationship, it is more than that of simple debtor-creditor. It is, as we have noted, difficult to conceive of the statutory provisions setting up a true trustee relationship, for apparently title remains in the tenant.

However, it makes little difference just what specific nomenclature is employed. The law is settled equally both as to pledgor and trustee relationships, indeed so clearly as to require only citations in passing.

"The pledgee cannot lawfully retain the property to secure a debt distinct from that for which it was pledged." (49 C. J. 972. See *Romero* v. *Newman*, 50 La. Ann. 80; 23 So. 493.)

"A pledge to secure a specific debt cannot be held by the pledgee as security for any other obligation, whether such obligation exists at the time of the pledge or accrues afterwards, except by express agreement between the pledgor and pledgee." (21 R. C. L. 653.)

"The evidence upon the trial established the fact that the diamonds held by the plaintiff were pledged to him by the defendant

as security for the payment of the promissory note in suit. The plaintiff, therefore, was a bailee of the same and only had the right to retain them until his debt was paid." (*Cass* v. *Higenbotam*, 100 N. Y. 248, 252.)

This being the law as to pledges, it follows even more clearly that a trustee cannot set off his own personal claims against the fund he holds for his *cestui*.

" A trustee has no right to set off a claim against his beneficiary existing in the trustee's favor before his appointment. His appointment as a trustee gives him no advantage or superior rights over other creditors of his *cestui que trust*. So a claim for damages for a tort committed by the *cestui que trust* against the trustee cannot be included in an account, this being a question for a court of law." (26 R. C. L. 1389.)

*Finkelstein* v. *Bank of United States* (142 Misc. 403), cited by the defendant in support of the right to setoff, and on the basis of which she seeks to formulate as a general rule " that a trustee may set off against trust moneys in his possession an indebtedness owing by the beneficiary to him," cannot be so regarded.

That case enunciates a special rule, adopted for a particular situation. A mere reading of the case indicates that the court clearly appreciates that it is applying a rule to such circumstances alone. It seems to be based primarily on the theory of the general banker's lien, which has gained some favor in American law in recent years. Except in the presence of some such lien, it is the general rule throughout the country that the trustee must account for all property in his possession, and that as to his personal relationships with the *cestui*, he stands in no better position than any other creditor.

It is quite clear from the views and authorities above discussed that security deposited under a lease, to be returned at its termination, cannot be retained by the landlord because of any alleged breach of any agreement foreign to the lease itself. A contrary conclusion is destructive of the protective elements of the statute enacted for the tenant's benefit, and would lead to multitudinous alleged setoffs unjustified in law or in fact, besides effecting in practice a preadjudication of the merits of such claims. In the meantime, the tenant would also be deprived of liquid assets to which he is entitled and which he might sorely require. Such a weapon wielded by unscrupulous lessors, would be conducive to extortionate eventualities.

Further, while section 233 of the Real Property Law has not yet received any interpretation by the courts, it provides definitely that money deposited as security under a lease " until repaid or

so applied, shall continue to be the money of the person making such deposit or advance and shall be a trust fund in the possession of the person with whom such deposit or advance shall be made and shall not be mingled with other funds or become an asset of such trustee." Taking those words literally and giving them even ordinary legal effect and import, any suggestion of setoff arising out of a claim which is stranger to the lease, must be effectively and peremptorily rejected.

Upon the evidence, I am satisfied that a *prima facie* case, in all its essential elements, has here been established, and I find, as a fact, that it is sufficient to charge the defendant with the intent necessary to fasten criminal responsibility upon her.

It appearing to me, therefore, that the crime here charged has been committed, and there being sufficient cause to believe the defendant guilty thereof, I order that she be held to answer the same, bail to be fixed upon defendant's appearance before me.