THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* WILLIE SMITH, Defendant.

City Magistrate's Court of New York, Borough of Brooklyn, October 30, 1947.

*Miles F. McDonald, District Attorney* (*Mitchell Rosenberg* of counsel), for plaintiff.

*Antonio M. Luongo* for defendant.

CANUDO, C. M. The facts established in this prosecution are not disputed. At one o'clock on the morning of October 11, 1947, the arresting officer entered the premises occupied by the " Club 18, Inc." a membership corporation, at 141 Prince Street, in the county of Kings. He observed some couples dancing. Several cases of beer and a bottle of whiskey were found in one section of these premises, and near them were a cigar box labeled " Whiskey " and another labeled " Beer ", each of which contained coins of various denominations. No one was observed serving or drinking any beer or whiskey.

The officer asked for the person in charge and was directed to the defendant Willie Smith, who identified himself as the president of the " Club 18, Inc.", and who stated that as president he was willing to assume responsibility for everything

that was going on within these premises. In reply to questions asked by the officer, he stated that this was a social club and that neither the " Club 18, Inc." nor anyone else was licensed to sell alcoholic beverages there. He added that members and their guests, whenever they wished, would help themselves to beer and whiskey, placing 10¢ in the box marked " Beer " for each glass of that beverage taken, and 25¢ or more in the box marked " Whiskey " for each drink of whiskey taken. The officer arrested Willie Smith, but no charge has been brought against the " Club 18, Inc."

Subdivision 1 of section 100 of the Alcoholic Beverage Control Law provides that " No person shall * * * sell * * * any alcoholic beverage * * * without obtaining the appropriate license therefor * * *."

A *sale* is described in subdivision 28 of section 3 of the same Law as " * * * any transfer, exchange or barter in any manner or by any means whatsoever for a consideration, and includes and means all sales made by any person, whether principal, proprietor, agent, servant or employee of any alcoholic beverage * * *."

And the phrase *to sell* is defined in the same subdivision as " * * * to solicit or receive an order for, to keep or expose for sale, and to keep with intent to sell and shall include the delivery of any alcoholic beverage in the State." Subdivision 22 of section 3 of the said law states that " 'Person ' includes an individual, copartnership, corporation, society or joint stock company."

Nowhere in the Alcoholic Beverage Control Law is there specific language to the effect that an officer of a corporation, by virtue of his position, may be held liable for a violation of any section of this law.

The People having established, prima facie, a violation of subdivision 1 of section 100 of the Alcoholic Beverage Control Law, the individual defendant not having denied any of the facts alleged, and the corporation as such not having been brought before the court, the sole issue for consideration here is *whether this individual defendant may be held criminally liable for the violation of this penal statute by the membership corporation of which he is the president.*

No authoritative language has been found on the precise question whether an officer of a *membership corporation* may be held liable for a crime committed by such corporation.

Although an examination of the cases in this jurisdiction and an exhaustive study of precedents in other jurisdictions and in

the Federal courts would warrant the holding of a corporate officer under certain circumstances, for a crime committed by a corporation *organized for profit* and engaged in some form of *commercial enterprise,* a distinction must be drawn between that type of organization and a *nonprofit corporation* such as is involved in the case at hand. Solely because of this difference, the individual defendant in this case must be discharged.

The three leading New York cases on the issue of liability of corporate officers for crimes committed by stock corporations are *People* v. *Fleishman* (133 Misc. 288), *People* v. *Klinger* (164 Misc. 530) and *People* v. *Cooper* (200 App. Div. 413). In the *Fleishman* case (*supra*) the individual defendant was held not chargeable for the corporation's crime, while in the other two, which involved close family corporations, the contrary view was taken. The court in the *Fleishman* case felt that it had no alternative under section 1292-a of the Penal Law as it then existed, but to release the corporate officer who was charged with violation of that statute, and the Legislature subsequently amended that law so as to hold corporate officers liable for violations committed in the corporate name. It is urged that the same course be followed in the instant case, and that the Alcoholic Beverage Control Law be similarly amended.

In the *Fleishman* case (*supra,* pp. 291, 293) the court held that " * * * when a corporation issues its check in payment of a corporate debt owing to the payee, which check is not honored for lack of funds or credit, none of the officers who signed it in their representative capacity may be prosecuted under section 1292-a of the Penal Law, because none of them can be regarded as either maker, drawer, utterer or deliverer of the check. * * * under our system of government courts do not make laws: they interpret them; it is for Legislatures to prevent abuses by new enactments or by amendments of existing statutes."

In the *Klinger* case (*supra*), wherein a corporate landlord's secretary was prosecuted for embezzlement of securities deposited with the corporation under a lease, it was shown that the defendant owned one half of the corporation's stock and, with her husband, controlled the corporation. The court held (p. 533) that " Corporate officers may be criminally liable for their own acts although performed in their official capacity as such officers. * * * a corporate officer * * * is answerable where scienter or authority on his part are established, or when he is the actual, present and efficient actor behind the corporation."

The defendant in the *Cooper* case (*supra*) was an officer of a laundry corporation which was charged with maintaining a public nuisance in violation of a statute (Penal Law, § 1532) containing general language similar to that in issue here. It was shown that prior to incorporation of the business the defendant had owned the building in which the laundry was located, and that at the time of the alleged offense his wife owned it. When the defendant sought to evade responsibility on the ground that he was not the proper defendant, the court said (p. 415): " * * * defendant was apparently the man in charge, was at one time president and at the date of the alleged crime was treasurer of the corporation. * * * the evidence was sufficient to hold him personally for the crime, if a crime was committed. There is no dispute that he was the man actually conducting the business and he could not escape responsibility for a crime by pleading agency."

Discussion of the two New York cases in which corporate officers were held liable might indicate that such liability might be established only in the close family type of stock corporation. Examination of cases in other States, however, shows no such limited application of this principle, but rather leads us to conclude that any person may be held liable for the crime of a profit-making corporation of which he is an officer, so long as his participation or knowledge, plus his financial interest as an officer are shown. The Federal courts have gone even further and have eliminated the requirement of actual participation or knowledge.

In *Crall* v. *Commonwealth* (103 Va. 855) where a corporation was found conducting the business of peddling without the license required by statute, its vice-president was held criminally liable while a subordinate employee was found not liable. The court characterized as " too narrow " the defendant's contention that punishment for violation of this statute might be visited only upon the corporation, and stated (p. 589) that " if followed, [it] would in many instances afford immunity to the chief offenders, the officers of the corporation, without whose assistance it would be impossible for the corporation to engage in the prohibited business. A corporation can act alone through its officers and agents, and * * * the correct rule is that all who participate in it are liable."

In *State* v. *Thomas* (123 Wash. 299) a president who was also general manager of a corporation was found guilty of larceny as a result of his participation in a transaction by

which a client's money was diverted and lost. In *State* v. *Comer* (176 Wash. 257, appeal dismissed 292 U. S. 610) where the accused not only owned the majority stock of a corporation buying and selling bonds, but was its president and directing officer as well, the acts of the corporation dictated by him and done under his direction were found to be his acts and he was held liable for them. The court there stated (pp. 270–271): "The evidence shows * * * that what was done was done by his direction, permission or subsequent approval. Under the circumstances, the acts of the corporation, in improperly diverting the use of trust funds, were the acts of the appellant individually, and he is liable therefor."

*People* v. *White Lead Works* (82 Mich. 471) was a case in which the managing officers of a corporation, as well as the corporation itself, were held liable for committing a nuisance, where the business of the corporation was permitted to become such. And in *State* v. *Ross* (55 Ore. 450) it was held that an officer or employee of a corporation may be held criminally responsible for embezzlement or larceny of the property of a third person through a corporate act, where the act is done by the individual officer, at his direction or by his permission.

The Circuit Court of Appeals, in the year 1944, in the case of *Carolene Products Co.* v. *United States* (140 F. 2d 61, affd. 323 U. S. 18) went even further in placing criminal responsibility on corporate officers. In that case the president and vice-president of a corporation were convicted, along with the corporation itself, of violation of the Federal Filled Milk Act (U. S. Code, tit. 50, § 61 *et seq.*). The court said (p. 66): "There is ample authority in support of the principle that the directing heads of a corporation which is engaged in an unlawful business may be held criminally liable for the acts of subordinates done in the normal course of business, regardless of whether or not these directing heads personally supervised the particular acts done or were personally present at the time and place of the commission of these acts." In this decision the Circuit Court followed the rule laid down by Mr. Justice FRANK-FURTER in the United States Supreme Court in *United States* v. *Dotterweich* (320 U. S. 277) where the man who was president and general manager of a pharmaceutical supply corporation was held equally liable with the corporation for commission of a misdemeanor in violation of the Federal Food, Drug and Cosmetic Act (U. S. Code, tit. 21, § 301 *et seq.*).

Returning, then, to the case before us, and bearing in mind the ample precedents in New York and elsewhere, we must

decide whether the defendant Smith must be tried for violation of subdivision 1 of section 100 of the Alcoholic Beverage Control Law, in view of his official position, his presence in the club's premises and his participation in its activities on the occasion during which beer and whiskey were sold illegally. If this had been a business or trade corporation organized for profit and if the defendant, as its president, had had an active part in its business activities and some financial interest in the success of its commercial ventures, he would indeed be liable, in my opinion, notwithstanding the court's expression in the *Fleishman* case (*supra*). This result would prevail even though he were not the principal beneficiary of the corporation's profits, as was the case in the *Klinger* and *Cooper* cases (*supra*). But we have here a *membership corporation,* one which, under section 2 of the Membership Corporations Law, could not have been organized for pecuniary profit. The Membership Corporations Law provided for social groups such as the '' Club 18, Inc.'', educational and missionary organizations, alumni groups, hospital dispensary, library, employee welfare, political and charitable societies and countless other types of nonprofit associations. It is a basic rule that corporations which are to be organized for profit may not be incorporated under the Membership Corporations Law. (*Matter of Rockefeller,* 177 App. Div. 786; *People ex rel. Blossom* v. *Nelson,* 46 N. Y. 477.)

There is nothing in the evidence before us to show that the defendant is the recipient of any salary, compensation or emolument for his services as president, or that he had any personal financial interest in the sale of beer or whiskey in the club's headquarters. It is reasonable to assume that no such interest exists.

If the Legislature had intended that an individual should be held criminally liable for violation of the Alcoholic Beverage Control Law by a membership corporation of which he is an officer, specific statutory provision should have been made — such provision as now exists, for example, in section 1292-a of the Penal Law. In the absence of any such statutory language, the defendant Willie Smith is discharged.