Shanley N. Egeth,
J. Petitioner, a judgment creditor of B. D. H. Development Corp. in the sum of $2,223.25, tuted this proceeding against the respondent, the sole stockholder and principal officer of the judgment debtor, to procure a determination pursuant to subdivision (b) of CPLR 5225 that respondent is in possession of or the transferee of certain moneys belonging to the corporate debtor, and that said sums should be turned over to petitioner to satisfy his judgment aforedescribed.
The testimony adduced in the hearing held before this court was so undisputed as to constitute stipulated facts.
On April 14, 1970, the respondent, Halberstam, executed a contract to purchase certain real property from a seller, Tivon Investors, Incorporated, and posted a down payment of $7,500 thereunder. Thereafter respondent sought to sell his interest therein. Thereafter, respondent caused Ms attorney to form B. D. H. Development Corporation. All stock was issued to Halberstam as the sole stockholder.
Respondent then renegotiated his original purchase agreement with Tivon Investors, Incorporated. On December 8, 1970, a new contract for the purchase of the same property was executed by the same vendor with B. D. H. Development Corporation. Said contract was originally prepared in the name of the respondent. Subsequent thereto his name was lined out, and the corporation’s name was typed in as the purchaser, and respondent then executed the contract for the corporate debtor. Under this second contract the purchase price was increased $5,000, the down payment was decreased from $7,500 to $1,500, and the purchaser posted the sum of $4,500 thereunder, as an additional option payment to the vendor for its agreement to delay the closing date until August 16, 1971. In so doing, the respondent applied $6,000 of the original purchase price to the new corporate contract, and the remaining $1,500 was returned to the respondent.
The corporate purchase contract recited the posting of the moneys required thereunder. There were no other written agreements between the respondent and the corporate judgment debtor defining the relationship of the parties to the moneys posted under the purchase contract. Nor were there any writ *396 ten agreements between them concerning the issuance of stock to respondent, the capitalization of the corporation, or the making of any loans by respondent to the corporate debtor, although respondent claims the money was so loaned.
The corporate debtor entered into a contract with the petitioner on December 17, 1970 for the sale of its contract rights, or the property which was the subject thereof. Petitioner posted a $15,000 down payment thereunder following his demand that the entire down payment be held in escrow by the attorney for the corporate debtor. The corporate debtor agreed that $13,000 would be escrowed, but refused to so do for the remaining $2,000, claiming it was needed to pay a down payment on its brokerage commission. Ultimately, petitioner withdrew his demand to escrow this $2,000 following the express representation that the corporate judgment debtor possessed sufficient substantial assets to enable the return of the $2,000, including all of the moneys it paid in under its purchase agreement.
Subsequent to the execution of these agreements, the property which was the subject of all three contracts was condemned by the City of New York. Thereafter, demand was made upon Tivon Investors corporation for the return of all moneys paid to it under the contract of December 8, 1970.- At their request, the $1,500 deposit Was returned to the attorneys who represented both the judgment debtor and the respondent. One thousand dollars of said sum was retained by the attorneys as payment for outstanding fees, and the remaining $500 was paid over by them to Halberstam. They also requested the vendor to return the $4,500 option money to the respondent, rather than the corporate debtor, and a substantial portion thereof was so paid over. They anticipate that the remainder will also be paid to Halberstam.
Upon the basis thereof this court is now confronted with a single question for determination: Whether the corporate judgment debtor, B. D. H. Development Corporation, or the respondent, Halberstam owned, or had a right to receive the moneys returned or due under the December 8, 1970 purchase contract.
There can be no question that the moneys received by this respondent did not belong to him and did not represent a proper repayment of any loan made by him. There is no legal or equitable principle available to justify respondent’s act of divesting his corporation of the money returned under the contract, and converting it to his own personal use to the detriment of the rights of an existing creditor. No court would or should provide any judicial sanction for this respondent’s bold act of *397 stripping his corporation of the assets which it required to satisfy an existing creditor by means of acts of self-dealing with himself which resulted in the diversion of corporate assets to his personal account.
If there were no other course open to this court, it could avail itself of its inherent equity power to provide redress from the acts of an officer, director or stockholder of one man or family corporation who used the corporation £ ‘ merely as a corporate pocket of the dominant [in this case, sole] stockholder, who, with disregard of the substance or form of corporate manage-, ment, has treated its affairs as his own. And so-called loans or advances by the dominant or controlling stockholder will be subordinated to the claims of other creditors and thus treated in effect as capital contributions by the stockholder * * * but also where the paid-in capital is purely nominal [and] the capital necessary for the scope and magnitude of the operations of the company [is] being furnished by the stockholder as a loan.” (Pepper v. Litton, 308 U. S. 295, 309, 310 [1939]). On page 311 of the Pepper case, Justice Douglas further stated that a stockholder ‘ ‘ cannot by the intervention of a corporate entity violate the ancient precept against serving two masters * * # He cannot violate rules of fair play by doing indirectly through the corporation what he could not do directly * * * no matter how meticulous he is to satisfy technical requirements.” (See, e.g., Lowendahl v. Baltimore & Ohio R. R. Co., 247 App. Div. 144, affd. 272 N. Y. 360; Rapid Tr. Subway Constr. Co. v. City of New York, 259 N. Y. 472; Berkey v. Third Ave. Ry. Co., 244 N. Y. 84.)
If it were necessary to determine the rights of these parties solely by application of the standards of Mr. Justice Douglas, this court would so do. This court however is prepared to utilize the common-law principles of examining all of the facts, conduct and surrounding circumstances to evidence a clear manifestation of intention by this respondent in creating his corporation and entering into a corporate contract which recites corporate ownership of the $6,000 in question. Application of appropriate legal rules compels the interpretation that in forming this corporation and executing its purchase agreement, the respondent herein irrevocably transferred his prior contract right to purchase, and the $6,000 to the corporation, and upon the execution of said contract, said moneys became the absolute property of the corporate debtor, and could under no circumstances justify a construction that said moneys were loaned to the corporation. (Matter of New York World Telegram Corp. *398 v. McGoldrick, 298 N. Y. 11; Greenwood Lake & Port Jervis R.R. Co. v. New York & Greenwood Lake R.R. Co., 134 N. Y. 435; Matter of Jamestown Lodge No. 1681 Loyal Order of Moose [Gorsi], 285 App. Div. 919; Matter of Hoppl [Corsi], 285 App. Div. 920.) (See, also, Feder v. Caliguira, 8 N Y 2d 400 [lease-license] ; Matter of Electrolux Corp., 288 N. Y. 440 [employer-independent-contractor] ; Distillers Factors Corp. v. County Distillers Prods., 189 Misc. 497 [sale or assignment] ; Cagliostro v. Galgano, 69 Misc. 321 [mortgage or lease].)
In the instant case, there are no confirmatory agreements evidencing any loan relationship which would be required to be ignored or set aside on equitable grounds. This respondent has engaged in no conduct inconsistent with corporate ownership of the funds, other than the acts of appropriation of the. corporation’s money to his own account. As a matter of fact an express representation was made to this petitioner that respondent’s corporation possessed adequate assets, including ownership of the contract money in question, and petitioner in reliance thereon withdrew his demand as to the-escrowing of the $2,000 of his purchase deposit. This clearly creates the basis for a classical estoppel, which bars respondent from subsequently asserting a claim against the petitioner as to personal rather than corporate ownership of the subject funds. (Triple Cities Constr. Co. v. Maryland Cas. Co., 4 N Y 2d 443; Metropolitan Life Ins. Co. v. Childs Co., 230 N. Y. 285, 292; Lynn v. Lynn, 302 N. Y. 193, 205; Winchester-Simmons Co. v. Simmons, 222 App. Div. 639.)
This court having determined that the corporate judgment debtor was the owner of the subject moneys, it is clear that its sole stockholder, the respondent herein, “ could not legally have caused its [corporation’s] property to be transferred to himself in derogation of the rights of creditors.” (Grad v. Roberts, 14 N Y 2d 70, 76 [1964]). (See Ward v. City Trust Co. of New York, 192 N. Y. 61; Stefanzyn v. Brooklyn Nat. Bank of New York, 251 App. Div. 259.) Corporate assets have been deemed to be a trust fund for the benefit of creditors to enable them to gain equitable relief following a breach of a fiduciary duty by a self-dealing or self-aggrandizing stockholder or director who appropriates such assets to his own use. (Pepper v. Litton, 308 U. S. 295, supra; Hurd v. New York & Commercial Steam Laundry Co., 167 N. Y. 89; Everett v. Phillips, 288 N. Y. 227; Darcy v. Brooklyn & N. Y. Ferry Co., 196 N. Y. 99.)
Under such circumstances an officer of such a corporation may be held financially liable to a creditor for his act of conversion *399 of a corporate asset in or to which the creditor has a claim. (Mendelson v. Boettger, 257 App. Div. 167; McCrea v. McClenahan, 131 App. Div. 247; Melnick v. Sable, 11 A D 2d 1075, which relied upon Britton v. Ferrin, 171 N. Y. 235 in holding personal liability for the failure to return a contract down payment.) Personal liability has even been imposed upon corporate officers with knowledge of the conversion or misappropriation of corporate assets by others, upon their failure to prevent such a dissipation of assets. (Santa Barbara v. Avallone & Miele, 270 N. Y. 1.) In a number of instances conduct of such an officer in converting corporate assets has resulted in penal prosecution. (People ex rel. Belleci v. Klinger, 164 Misc. 530; People v. Osser, 9 Misc 2d 585; People v. Smith, 190 Misc. 871.)
Upon the basis of the foregoing the moneys taken and received by this respondent constitute corporate assets which appropriately may be reached by petitioner to satisfy his judgment against the corporate judgment debtor. This includes the $1,000 in corporate assets retained by the attorneys for the respondent and judgment debtor, which may also be reached by petitioner, if necessary. Respondent should not be permitted to pay his attorney’s fees with petitioner’s money.
.An order and judgment may be entered in this proceeding to effectuate the return of these moneys without requiring the petitioner to commence an unnecessary plenary action. (Siemens & Halske v. Gres, 32 A D 2d 624; see Matter of Sumitomo Shoji New York v. Chemical Bank N. Y. Trust Co., 47 Misc 2d 741, affd. 25 A D 2d 499; Matter of First Small Business Inv. Corp. v. Zaretsky, 46 Misc 2d 328, supra.)
Settle order and judgment on notice for the entire amount due to petitioner with interest and costs.